# CHARLESTON.

## BALTIMORE & OHIO RAILROAD CO. v. BONAFIELD'S HEIRS.

### Submitted October 31, 1916.   Decided November 21, 1916.

1. EMINENT DOMAIN—*Proceedings—Petition—Offers.*

   In a condemnation proceeding by a railroad company to acquire land for trackage, commissioners were appointed to view the premises and report what would be a just compensation to the landowners for the land taken and damages to the residue. After their report was filed, the applicant paid into court the amount assessed by them and began work of construction, and both parties excepted to the report, the applicant because the amount was too much and the land-owners because it was not enough, and both demanded a jury trial. Thereafter, and before a trial was had, the applicant was permitted to file an amended petition containing numerous offers, one of which was a declaration of its purpose to build and maintain a retaining wall on its right of way, to protect a brick building standing near by, on a portion of the land-owners' land not taken, and the others proposing to grant the land-owners certain privileges and easements. The land-owners declined to accept the offers and, at a later term, moved to strike the amended petition from the record, which motion the court sustained, but permitted the applicant to file, at the trial, a written stipulation that it would build and forever maintain the retaining wall, described in its amended petition. *Held:* the court's rulings did not prejudice the applicant, and the order filing the amended petition, being interlocutory, could properly be set aside at a subsequent term.   (p. 290).

2. SAME—*Condemnation—Damages.*

   The land-owners are not bound to accept privileges and benefits, tendered by the condemnor, in mitigation, or in lieu of damages, which are not in the nature of special benefits arising from the construction of the contemplated public improvement.   (p. 292).

3. SAME.

   Where damages accrue to the residue, on account of the taking of a part of the land-owners' land under the right of eminent domain, the law contemplates that such damages, in the absence of any agreement between the parties, shall be paid only in money and such special benefits to the remaining land as results from the construction and operation of the public improvement.   (p. 292).

4. SAME—*Condemnation Proceedings—Interest Acquired.*

   In condemnation proceedings by a railroad company, wherein it does not allege in its petition that it desires less than a fee

in the land to be taken, and commissioners are appointed and report what amount is a fair and just compensation to the landowners, and the applicant pays into court the amount so ascertained, title, in fee, to the land described in its petition and plat filed therewith, as necessary for its purposes, vests in it immediately, and the land-owners' compensation must be ascertained as of that time. (p. 293).

5. SAME—*Proceedings—Damages.*

After such vesting of title, the applicant can not abandon the use of a part of the land taken and set off against his damages the benefit resulting therefrom to the land-owners. The applicant should ascertain, before paying the money into court, that a less quantity of land would answer its purpose, and then amend its petition accordingly, and have the report recommitted. (p. 293).

6. EVIDENCE—*Value of Property.*

In ascertaining the value of land taken, the price voluntarily paid, by the applicant, to another land-owner for land similarly situated, is proper evidence to be considered by the jury, where damages to the residue are not involved. Distinguishing *Buckhannon & Northern R. R. Co.* v. *Great Scott Coal & Coke Co.,* 75 W. Va. 423. (p. 293).

7. EMINENT DOMAIN—*Proceedings—Damages.*

In ascertaining damages to a building, it is proper to consider its actual value at the time of the taking of the adjacent land, and, in order to ascertain its actual value, it is proper to consider its rental value and the original cost of its construction. (p. 296).

8. SAME—*Proceedings—Award of Damages.*

Courts rarely disturb the verdicts of juries in condemnation proceedings, if founded upon any reasonable view of conflicting evidence as to what amount is a just compensation to the land-owners. (p. 296).

9. SAME—*Proceedings—Evidence.*

In proving its value the land-owners are not limited to the use which they are then actually making of the land taken, but are entitled to have the jury consider its value for any purpose for which it is then reasonably available. (p. 296).

10. SAME—*Proceedings—Instructions.*

An instruction which would have told the jury they could disregard the testimony of witnesses, and rest their verdict upon their own judgment of what would be a just compensation to the land-owners, ascertained from a view had by them of the premises, is properly refused. (p. 296).

11. SAME—*Proceedings—Damages—Mitigation.*

   Where the land taken cuts off the water previously supplied to a building on one part of the land, by pipes extending to a spring on another part, the applicant is not entitled to prove, in mitigation of damages, that the land-owners, if they had voluntarily conveyed either part, would have been under the necessity of granting or retaining a water privilege.  (p. 296).

12. SAME—*Proceedings—Compensation.*

   Where the applicant has not stated in its petition a sum it is willing to pay the land-owners, and pays into court the amount ascertained by the commissioners, and thereafter both it and the land-owners except to the report, on account of the amount so found, and demand a trial by jury, and such trial results in a reduction of the amount reported by the commissioners, the applicant is entitled to have such excess returned to it, and neither party is entitled to costs against the other.  (p. 298).

13. SAME—*Proceedings—Payment of Award.*

   If the fund paid into court has been lent out, by order of court, and has earned interest, each party should bear his ratable share of the expense of lending it, and each is entitled to his ratable share of the interest earned.  (p. 298).

14. SAME—*Proceedings—Special Receiver.*

   The special receiver, authorized to lend such fund, is entitled to a reasonable commission, which should be commensurate with the services rendered.  (p. 298).

   (MASON and MILLER, JUDGES, dissenting in part).

Error to Circuit Court, Preston County.

Condemnation proceedings by the Baltimore & Ohio Railroad Company against A. J. Bonafield's heirs and others. Both parties objected to the award of commissioners, and, there being judgment for defendants, plaintiff brings error.

*Reversed and remanded.*

*F. E. Parrack* and *P. J. Crogan,* for plaintiff in error.

*Smith & Jackson, A. G. Hughes* and *J. V. Gibson,* for de-defendants in error.

WILLIAMS, PRESIDENT:

The Baltimore & Ohio Railroad Company instituted this condemnation proceeding to obtain title to two small pieces

of land in the town of Tunnelton, Preston county, belonging to the heirs of A. J. Bonafield, deceased, for the purpose of increasing its trackage.  Upon the filing of its petition, setting forth the purpose for which the land was needed and describing it by metes and bounds, one parcel as containing .51 of an acre and the other .13 of an acre, accompanied with a survey and plat of the land and the adopted changes to be made in the railroad, comissioners were appointed to view the premises and report upon the value of the land taken and the damages to the residue.  They reported on the 10th of October, 1910, that $30,000 would be a just compensation for the land taken and damages to the residue.  The applicant thereupon elected to pay, and did pay into court the amount of money assessed by the commissioners.  Both parties being dissatisfied with the amount assessed, excepted to the commissioners' report, and the court ordered a trial by jury to ascertain what sum would be a just compensation.  A trial was had and a verdict rendered, on the 18th of July, 1913, finding that $29,500 would be a just compensation both for the lands taken and damages to the residue, and the applicant was awarded this writ of error, upon its petition alleging numerous errors committed during the trial of the case.

One of its principal assignments is that, on the 30th of June, 1913, the court erroneously struck out the applicant's amended petition, which it had previously permitted it to file, by order entered December 15, 1911, and permitted it to file and have made a part of the record only a part of its written stipulations tendered at the trial and rejected other parts, setting forth its plans of construction of its road and certain changes which it desired to make in its original plans. That part permitted to be filed reads as follows:

"The Baltimore & Ohio Railroad Company, the applicant in this case, now here stipulates and offers in connection with and as part of its general scheme and method of construction of its railroad through the Town of Tunnelton, and especially as to the residue of the property of the land owners in this case, as follows:

"*First:* That the retaining wall as constructed by the applicant at the north side of the land owners building, known

as the brick bank building, not taken, and to which damages are claimed by the land owners, together with a strip of land 6 feet wide along the full length of said building on said north side between said building and said retaining wall and adjoining said building, said retaining wall being constructed between said strip of land and the railroad tracks of the applicant so constructed under this improvement, and said retaining wall adjoining said strip of land, shall and will be forever maintained and kept in place by the applicant as a part of its said construction work, and as a protection to said railroad company's works, and to prevent the caving in of the earth and the land between said tracks and said building of the land owners, and being so maintained and kept, will and shall give access to said buildings at the north side thereof.''

And the portions that were rejected are as follows:

''*Second:* That a public easement and wagon-way at the east end of said bank building owned by said land owners and adjoining said bank building and from said company's land at the east end of said building, and connecting with the public street of the Town of Tunnelton, will and shall be forever maintained and kept by the applicant, which public easement and wagon-way does now and will and shall forever connect with the said bank building at the east end thereof and at the other end of the said easement connect with a public street of said town giving free access perpetually to said building at the east end thereof, and to and with the public streets of said town.

''*Third:* That a strip of land six feet in width at the west end of said land owners said building and adjoining thereto and extending the full width of the west end of said building, will be forever reserved and maintained by the applicant as a protection to the west end foundation of said building.

''*Fourth:* That the water pipe connections to said bank building owned by said land owners, which had been connected prior to the beginning of this proceeding by the land owners, aforesaid, for the purpose of supplying water to and in the said bank building, and which connection was temporarily obstructed during the time of the construction of

said improvements, shall and will be forever permitted to be reconnected underneath the applicant's right of way as said connections had been heretofore maintained by the said land owners. The said connection to be maintained free of cost and expense to the land owners.

"*Fifth:* That a plat showing said two 6 feet strips, said retaining wall, said east end easement and wagon-way, said company's tracks at the north side of said building, and said building itself is hereby attached and made a part of this stipulation and offer and marked 'Exhibit Plat.' "

The applicant was permitted to file the written offer providing for the maintenance of a retaining wall on the north side of defendants' building. This was the only one of the several offers that related to the manner of constructing the railroad. The others were simply propositions or offers to grant, and forever maintain, certain privileges or easements over and across the applicant's tracks, and over land which it had acquired from land-owners other than defendants for their benefit. It is not necessary to determine whether the applicant had a right to amend its petition in any respect, after having elected to pay into court the compensation assessed by the commissioners and begun its work of construction, and we do not decide that question. But assuming it had such right, it would be limited to such matters only as affected the manner of constructing its railroad improvement, and it was virtually permitted to amend it in that respect, by allowing it to file its first offer, above quoted, when the case came up for trial. Hence it was not prejudiced by the striking out of its amended petition, which contained the same offer. The contention in brief of counsel for the applicant, that the order filing his amended petition is final and, therefore, could not be set aside at a later term, is not sound. It was an order relating to procedure only and was clearly interlocutory, and within control of the court until the trial.

Those parts of the stipulations, which were rejected, were simply offers, made by the applicant to secure to the land-owners certain privileges, not special benefits arising from the construction and operation of the railroad, which they were not bound to accept. They were simply proffers of an agree-

ment with the land-owners to do certain things and maintain certain conditions for the benefit and protection of the residue of their land and the building, not taken for applicant's railroad. These proffers they were not obliged to accept. Where damages to the residue of land is occasioned by the taking of a part thereof for a public purpose, the law contemplates that damages shall be settled for in money only and special benefits, if any, to be derived from the construction of the public improvement. *Railroad Co.* v. *Halstead,* 7 W. Va. 301; *C. & O. R. Co.* v. *Patton,* 6 W. Va. 147; *Herron* v. *Carson,* 26 W. Va., opinion of Judge GREEN at page 83; and *Roanoke City* v. *Berkowitz,* 80 Va. 616.

As to the third proposition rejected, title to the land described in the applicant's original petition and map filed therewith, as being necessary for its right of way, vested in the applicant, by operation of law, as soon as it elected to pay, and did pay into court the amount of compensation assessed by the commissioners. Sec. 18, Ch. 42, Barnes' Code. The actual taking was then complete, and damages to the residue of the land were to be ascertained as of that time. *Buckhannon & Northern R. Co.* v. *Great Scott Coal & Coke Co.,* 75 W. Va. 423. The applicant could not thereafter abandon the use of a part of the land already taken, and set-off the benefit, thereby accruing, against the land-owners' damages. If the applicant thought a less amount of land would answer its purpose, than it had sought by its original petition to appropriate, it should have amended its petition and moved for a recommittal of the report in order to enable it to modify its plans, before it paid the money into court and thereby acquired the title.

Evidence was admitted, over the objection of the applicant, of the comparative value of the lot of ground taken and a lot just across the street from it, which the owner, Mr. T. R. Shay, sold to the railroad company about the time this condemnation proceeding was instituted. Relying upon the recent case of *Buckhannon & Northern R. Co.* v. *Great Scott Coal & Coke Co., supra,* counsel assign this as error. The twelfth point of the syllabus in that case is as follows:

"Nor is evidence of prices paid others by the condemnor

for land and damages to the residue, though located in the same vicinity, proper evidence to go to the jury on the question of damages, and its admission over objection is reversible error.''

The distinguishing feature of the two cases is, that the comparison of the price voluntarily paid with the value of the land sought to be taken, in that case, included also damages to the residue, whereas in this case, only the value of the respective pieces of land is considered. In the present case the purchase from Shay was of a distinct lot, leaving no residue to be affected, and the price which the applicant voluntarily paid is compared with the value of a part of a lot condemned by this proceeding, not including any resulting damages. No matter of compromise or compulsion seems to have been involved. Contrary to the rule stated by Lewis in his work on Eminent Domain and quoted in the opinion in the former case, the weight of authority, as well as the better considered. cases, favors the admission of such evidence. The testimony complained of proves that Mr. Shay sold his naked lot, after removing the buildings therefrom, to the applicant at the price of $6,000, and witnesses were permitted to compare the price paid with the value of that part of defendants' lot, taken for railroad purposes, distinct from the matter of damages to the residue. Why should not the price it voluntarily paid for property in the same vicinity, to be used for the same purpose, and separated from the property to be taken only by a public street, not be permitted to go to the jury for what it is worth, as competent evidence of value? It is certainly a probative fact, not, however, conclusive in character. Where the matter of damages is not involved, which, of course, would depend upon the circumstances of each particular case and could, therefore, hardly be made a matter of comparison, we see no plausible reason for excluding such evidence. The applicant was not bound to pay any more for Shay's lot than it was worth. If it thought he was demanding too much, the same means of obtaining it, at a fair and just valuation, was available which it has employed to obtain defendants' land. It was under no compulsion to pay him an unreasonable price, and there is no evidence that it was paid as a compro-

mise. Therefore, the price which it did pay is in the nature
of an admission of the value of the same kind of property in
that vicinity. The rule, in such cases, is thus stated by the
New Jersey court in *Laing* v. *United N. J. R. R. & Canal Co.,*
25 Atl. 409; "Generally, in this and other states, evidence of
sale of land in the neighborhood is competent on an inquiry
as to the value of the land, and if the purchases or sales were
made by the party against whom the evidence was offered it
might stand as an admission."

And the rule was applied by the supreme court of Virginia
as follows: "A railway company having purchased an undi-
vided half interest in real estate at a specified price under
circumstances which show that the purchase was made with-
out compulsion and not by way of compromise, evidence
thereof is admissible for the purpose of ascertaining the mar-
ket value of the remaining undivided half of the same prop-
erty in a proceeding instituted by the company for its con-
demnation." *Seaboard Air Line Co.* v. *Chamblin,* 108 Va.
42. The same rule has been announced in the following cases:
*Louisiana Navigation Co.* v. *Morere,* 41 So. 236; *Washburn*
v. *Milwaukee & L. W. R. Co.,* 18 N. W. 328; *American
States Security Co.* v. *Milwaukee Ry. Co.,* 120 N. W. 844;
*Concord R. R.* v. *Greely,* 23 N. H. 237; *Fort St. Union Depot
Co.* v. *Jones,* 47 N. W. 349; *Wyman* v. *The Lexington & West
Cambridge R. R. Co.,* 13 Metc. 316; *Presbrey* v. *Old Colony
& Newport Railway Co.,* 103 Mass. 1; *O'Malley* v. *Common-
wealth,* 65 N. E. 30; *Chapin* v. *Boston & Providence Rail-
road Corporation,* 6 Cush. 422; *Kelliher* v. *Miller,* 97 Mass.
71; *Fall River Print Works* v. *City of Fall River,* 110 Mass.
428; *Providence & W. R. Co.* v. *City of Worcester,* 29 N. E.
56; *Port Townsend Southern R. Co.* v. *Barbare,* 89 Pac. 710;
*City of Tacoma* v. *Wetherby,* 106 Pac. 903; *Spokane & P. Ry.
Co.* v. *Lieuallen,* 29 Pac. 854; *Howard* v. *Providence,* 6 R. I.
514; *Cleveland C. C. & St. Louis Ry. Co.* v. *Smith,* 97 N. E.
164; *Peoria Gaslight & Coke Co.* v. *Peoria Terminal Ry. Co.,*
34 N. E. 550; *Metropolitan St. Ry. Co.* v. *Walsh,* 94 S. W.
860; and *Springfield* v. *Schmook,* 68 Mo. 394.

While the true test of the market value of the land, at the
time it was taken, is the price for which it could then have

been sold by a person desirous of selling, to a person wishing to buy, neither acting under compulsion and both exercising intelligent judgment, the price paid for the Shay lot is an evidential fact, to be taken in connection with other evidence of value, to determine what is such market value.

In ascertaining the damages to defendants' building it was proper to take into consideration its value, the more valuable it was the greater would be the damage to it; and, in ascertaining its value, evidence of the original cost of its construction could properly be considered, notwithstanding it had been built some years before this proceeding was instituted, but the probative value of such evidence depends upon the extent of deterioration of the building, if any, and the comparative cost of labor and material now, and at the time the building was erected. It was also proper to consider its rental value as a circumstance in determining its actual value.

There is great diversity of opinion among the witnesses both as to the value of the land taken and damages to the residue. Such is nearly always true in cases of this character, and courts are slow to overturn verdicts of juries on the alleged ground of excessiveness, when they are founded on any reasonable view of the evidence as to what is a just compensation, where no error has been committed by the trial court by admitting improper evidence or by excluding proper evidence, and we find no such error in this case. The compensation ascertained by the jury is not as much as some of defendants' witnesses estimated it should be and is much more than the estimate of many other witnesses. From the mass of conflicting evidence, aided by their own view of the premises, the jury had to determine what was fair and just, and this court can not see that the amount which they found is excessive.

Evidence was admitted on behalf of the land-owners to show that the strip of land, taken by the applicant, could have been divided into building lots and would have made five lots, the dimensions of each of which were given, and this is assigned as error. The land-owners had a right to show the uses for which the land was adapted, having due regard to the business wants and needs of the community or which

might reasonably be expected in the immediate future, as a matter affecting its value. The property was located in a town, and the evidence shows that the land taken could have been used as building lots. In proving the value of the land the land-owners were not limited to the uses they were then making of the land, but were entitled to prove its value for any purpose for which it was then available. *Guyandotte Valley R. R. Co.* v. *Buskirk,* 57 W. Va. 417.

On request of the applicant the court gave to the jury thirteen instructions, but refused to give ten others on objections thereto by defendants, and its refusal to give those instructions is assigned as error. It also gave a number of instructions on request of the land-owners, over the objections of the applicant, the giving of which is also assigned as error.

We have carefully examined both the instructions given and those refused and find no error either in giving or in refusing instructions. A number of those refused correctly state the law, but were properly refused because the same points were covered by others that were given, and others refused did not correctly state the law applicable to the case. Counsel, in brief, complain most of the court's refusal to give the applicant's No. 23. This instruction was based upon the fact that the land taken lay between defendants' bank building and a spring on another portion of their land, not taken, from which they had been piping the water, and cut off the water supply from the building. This fact was proven, as an element of damages to the building. The instruction, if given, would have told the jury that, in estimating damages to the residue of defendants' land, they had a right to consider that, if defendants had voluntarily sold the building and the lot on which it stood and had retained the other portion of the land, they would have had to grant a water privilege, appurtenant to the building, and, if they had granted the part on which the spring is, they would then have had to retain an easement for the conveyance of the water from the spring to the building, and that the jury had a right to consider those circumstances in estimating the damages. Provisions which the owners could, and might have made in regard to supplying water to other parts of their land from a

spring on a certain part of it, do not affect the damages in this case. The condemnation vests in the railroad company the fee in the land taken, and cuts off their means of supplying one portion of land with water from the other. They rejected the written offer tendered by the railroad company at the trial, which would have permitted them to lay and forever maintain a water pipe underneath its tracks. They had a right to reject the offer. It was optional with them whether they would accept the railroad company's proffered agreement in mitigation of damages, and, having declined the offer, they are entitled to such damages as actually resulted from cutting off the water supply from the building. Hence, this instruction was properly refused.

Although the compensation assessed by the commissioners was materially reduced by the verdict of the jury, the court nevertheless adjudged costs against the applicant, and fails to direct repayment to it of the excess of $500, above the verdict. The applicant was clearly entitled to have that much returned to it. The court also allowed J. W. Watson, special receiver, commissions amounting to $1,500 out of the fund, and the applicant complains of this also. Both the applicant and the land-owners excepted to the commissioners' report on account of the amount of compensation assessed by them, and both demanded a trial by jury to ascertain what would be a just compensation. The jury found $500 less than the amount reported by the commissioners. Sec. 21, ch. 42, Code, provides: "If what was so paid (into court) exceeds the sum ascertained by such subsequent report or verdict, the excess shall be paid back to the applicant out of the fund in court, or by the persons to whom the same shall have been paid." The applicant was entitled to the excess, free from costs or commissions. *Railroad, Co.* v. *Brown's Heirs*, 74 W. Va. 149. If the land-owners had been the sole movers for a trial by jury, then clearly, according to the last provision of sec. 21, ch. 42, Code, they would have to pay the applicant its costs. But the applicant joined in the motion for a jury trial, and, although it succeeded in reducing the amount of compensation assessed, it is not entitled to recover costs against the land-owners, because it has not complied with sec.

24, ch. 42, Code, by stating in its petition the amount which it was ready and willing to pay the land-owners as compensation for the land and damages. *Railroad Co. v. Brown's Heirs, supra.* Therefore, the law requires, in this case, that each party pay his own costs in the court below.

We can not agree with counsel for defendants in their contention, in brief, that the applicant has not, in fact, reduced the amount assessed by the commissioners, for the reason that, after they had made their report, the applicant was permitted to prove, that it had built and would forever maintain a certain retaining wall for the protection of defendants' building, which must have cost at least five hundred dollars, and was considered by the jury as off-setting, to that extent, the damages ascertained by the commissioners. It can not be said that the commissioners did not consider the necessity for such retaining wall and determine the amount of damages with reference to its construction by the applicant. · It must be presumed that they considered whatever was reasonably necessary to be done by the applicant to protect the land-owners' remaining property.

The interest earned on the fund, between the time it was paid into court and the date of the final order, is $2,412.99, and the commissions allowed the special receiver are $1,500. It does not appear whether he was put to much trouble to lend this fund or not. He may have loaned it to a bank at a low rate of interest. The aggregate amount of interest earned would seem to indicate that it was loaned at a low rate. If he loaned the fund in bulk to some banking or other responsible institution, the compensation allowed him would seem to be excessive, but the record does not sufficiently inform us in regard to the facts to determine whether or not the allowance is excessive, and if so, to correct it. The final order first adjudges that the land-owners recover from the Baltimore & Ohio Railroad Company $29,500 with interest thereon from the date of the judgment, and also their costs in the proceedings, and then ascertains that the amount remaining in the hands of the receiver, after allowing him a commission of 5% on $30,000, is $28,500, on which the interest then accumulated is $2,412.99, aggregating $30,912.99, and

directs the special receiver to turn that amount over to Guy Bonafield, the special receiver appointed in place of J. W. Watson, and requires him to give bond for the proper accounting for said fund for which he is not to be allowed any commissions. It does not appear what disposition is made of the excess of $500, which should have been returned to the railroad company. However, the error in the judgment calls for its reversal, but not for setting aside the verdict. The judgment is reversed and the cause remanded for further proceedings therein to be had according to the principles herein announced, and for the entry of a proper judgment upon the verdict. The taking was complete when the money was paid into court, title then vested and the applicant took possession of the land and proceeded with its improvement. Hence, the land-owners were entitled to their money as of that time, and, consequently, to the interest which the $29,500 earned. If the entire fund earned interest, the railroad company is entitled to its interest on the $500 to be returned to it, and each party should pay his own costs, including his ratable portion of a fair and just compensation to the special receiver. Plaintiff-in-error, having substantially prevailed here, is entitled to its costs in this court.

*Reversed and remanded.*

MASON, JUDGE, *(dissenting)*:

I am unable to concur in point 6 of the syllabus, as a rule of law applicable to this case. The propriety of allowing proof of sales of other properties similar to the property to be taken and whose value is being considered, is approved by the weight of authority in this country, although the contrary view is held in some jurisdictions. The authorities all agree that before such comparison can be made, the properties must be similarly situated and the sales must have been made at of this kind is the discovery of common or similar controlling of this kind is the discovery of comon or similar controlling elements of value, so that by showing the price the one sold for will tend to show the value of the other. Nothing will be accomplished by such comparisons if the conditions are vari-

ent. Usually the value of property to be taken for public use is determined by its market value.

Market value is the price fixed by buyer and seller in open market in the usual and ordinary transactions of business. We consult the "market" to ascertain the price which an article would bring under ordinary and normal conditions unaffected by elements which enter into transactions made outside the usual course of business. There is such a wide and essential difference between ascertaining values from sales made without any compulsion or necessity, and sales made to a person who was compelled to have the property, that it seems clear to me that no reliable information as to the market value can be gained by comparison of sales made under such dissimilar circumstances.

Of course if the condemnor has voluntarily bought land in the vicinity of the land to be condemned,—that is, land the condemnor needed but was not compelled to have,—and it is similarly situated, the price recently paid may be considered in ascertaining the value of the property to be taken, there being no question of damages to the residue in either case. That would be a voluntary purchase. But where the condemnor is compelled to have both parcels, the price paid for one of them under such circumstances, is not, in my opinion, proper evidence to be considered in ascertaining the value of the other parcel. In such case the purchase may apparently be voluntary, but it would in fact be made under compulsion, —that is, it would be a sale to a person not indeed compelled to *buy,* but compelled to *acquire title* in some way, which amounts to compulsion. A fair rule for ascertaining the market value of an article, is what would it bring if offered for sale in the open market by a person who desires to sell but is not compelled to sell, and bought by a person who desires to buy but is not compelled to have it? In such case the sale would show what a person who wanted to purchase paid to a person who wanted to sell, neither being under any compulsion and neither taking advantage of the necessities of the other. This would tend to show "market value."

But when the purchaser is compelled to acquire the property, he may prefer to pay more for it by private sale than it

is worth, in order to avoid delay and the trouble and expense of condemnation proceedings. And for a like reason the owner of the property, knowing that the proposed purchaser could take it from him by condemnation proceedings, might be willing to accept less than the property is worth to avoid the expense of a law suit. Such sales are in the nature of compromises and do not, in my opinion, tend to show "market value". "They are affected by an element which does not enter into similar transactions made in the ordinary course of business." 2 Lewis on Eminent Domain, (3rd ed.), sec. 667 (447).

"In arriving at the fair market value of property sought to be condemned by a railway company, evidence of what the company recently paid by purchase for other like property in the immediate vicinity similarly situated, to be used for like railroad purposes, is not competent. That is an exception to the well-established rule that a reliable method of arriving at the fair market value is to consider testimony of recent bona-fide sales of similar lands in the vicinity." *Metropolitan Street Railway Company* v. *Walsh et al.,* 197 Mo. 392.

"Evidence of sales of other similar property in the neighborhood, at or about the same time, tends to show the fair market value of the property sought to be condemned; and such sales, when made in the free and open market, where a fair opportunity for competition has existed, become material and important factors in determining the value of particular property. But to have that tendency they must have been made under circumstances where they are not compulsory, and where the vendor is not compelled to sell, at all events, but is at liberty to invite competition among those desiring to purchase." *Peoria Gas Light and Coke Co.* v. *Peoria Terminal Railway Company,* 146 Ill. 372.

"In a proceeding to condemn a strip of land through a farm for a railroad right of way, it is error to permit the defendant to prove what the petitioner had paid per acre for land for railroad purposes in the vicinity of the land sought to be taken." *Chicago & Alton R. R. Co.* v. *Scott,* 225 Ill. 352.

"It is error to estimate damages," (in proceedings for the condemnation of land for railroad purposes), "upon what has been paid by the corporation seeking the condemnation of land to owners of adjacent property." *Spokane & Palouse Railway Co.* v. *Lieuallen,* 2 Idaho 1101, 3 Idaho 381.

"In condemnation proceedings, it is incompetent for the defendant, upon the issue as to the market value of the property, to show the price paid by the condemning party for similar property." *Railroad Co.* v. *Barbare,* 46 Wash. 275.

To the same effect are the following cases: *Railroad Company* v. *Everett,* 225 Ill. 529; *Werthman* v. *Railroad Co.,* 128 Iowa 135; *White* v. *Railroad Co.,* 4 Cush. 440; *Fall River Print Works* v. *Fall River,* 110 Mass. 428; *Cobb* v. *Boston,* 112 Mass. 181; *Donovan* v. *Springfield,* 125 Mass. 371; *Railroad Co.* v. *Worcester,* 155 Mass. 35; *Springfield* v. *Schmook,* 68 Mo. 394; *In the Matter of Thompson,* 127 N. Y. 463; *Railroad Co.* v. *Ziemer,* 124 Pa. St. 560; *Howard* v. *Providence,* 6 R. I. 514.

In our own case of *B. & N. R. R. Co.* v. *Great Scott Coal & Coke Co.,* 75 W. Va. 423, we adopted the same principles. The opinion of the court refers approvingly to the principles laid down by Lewis on Eminent Domain above referred to.

Judge MILLER authorizes me to say that he concurs in the foregoing opinion.