THE VIRGINIAN RAILWAY COMPANY *v.* SPRAGUE LAND COMPANY, *et al.*

(No. 8948)

Submitted October 4, 1939. Decided November 14, 1939.

*W. C. Plunkett* and *John R. Pendleton,* for plaintiff in error.

*Okey P. Keadle,* for defendants in error James Damron and Leola Sanders Damron.

RILEY, JUDGE:

In this proceeding in eminent domain, The Virginian Railway Company prosecutes this writ of error to the judgment of the Circuit Court of Wyoming County directing payment to James and Leola Sanders Damron, defendants in error, the owners of all minerals, except coal, underlying the tract sought to be acquired, of $2,750.00, the balance of a commissioner's award in the amount of $15,000.00, after the payment of $12,250.00 by the railway company to Sprague Land Company for the surface and coal.

In this case, the railway company did not elect in the first instance to acquire less than a fee as it could have done under Code, 54-2-2. In fact, the petition is broad enough in its allegations and prayer to indicate that petitioner sought to obtain the fee simple title thereto, and the owners of both the surface and minerals, including the Damrons, were made parties defendant therein. After the filing of the petition, commissioners were appointed, all five of whom signed the report dated November 18, 1937, three reporting compensation at $15,000.00, one at $4,000.00, and the fifth at $4,200.00. Exceptions were filed to the report by the railway company: (1) that, because it lacked unanimity, it was not a report by commissioners as required by the statute; and (2) that the amount of $15,000.00 was excessive. On April 27, 1938, the court, af-

ter argument, entered an order taking under advisement the exceptions to the report, which order further provided:

> "It appearing to the court that negotiations have been and are now pending between the Railway Company and the respective defendants for a settlement of the matters involved in this proceeding and that by reason of said negotiations the Railway Company has entered upon the land taken and prosecuted construction work thereon without having paid the sum awarded by the Commissioners into Court as required by law under an agreement between the parties that such entry and prosecution of work on said land should be without prejudice to the rights of the defendants or any or either of them, and in view of such pending negotiations this case is continued on motion of the Railway Company until the next regular term of this court without prejudice to the rights of any of the parties to this proceeding."

Thereafter, on July 11, 1938, the first day of the next regular term, the railway company filed its motion to dismiss the proceedings at its cost, which the Damrons resisted. There was attached to and made part of the motion, a deed, bearing date January 18, 1938, whereby the railway company acquired from Sprague Land Company, upon a payment of $12,250.00, all the property sought to be acquired, except the mineral interest owned by the Damrons. At a hearing had on this motion, it appeared that the construction of the railway on the land involved had been completed, and evidence was adduced to the effect that the Damrons' mineral interest had not been taken or damaged, that it was not necessary to do so, and the railway company vouched that it would not interfere with the removal of said minerals. This motion was overruled by court order entered July 18, 1938. A separate order was entered on the same day whereby the court adjudicated that the report of the commissioners constituted a finding that $15,000.00 was a just compensation for all of the property, including minerals, and that said

report met the requirements of the statute (Code, 54-2).

Upon the joint motion of the land company and the railway company, the proceeding was dismissed as to the former by order entered September 9, 1938. Subsequently, an order was entered on March 1, 1939, at a regular term, whereby the railway company was permitted to withdraw its exception No. 2 to the report, and its demand for a jury trial. At the same time, the motion that the Damrons be dismissed was renewed and overruled. The order recited that the railway company had been permitted to take possession of the land under an agreement with defendants that it may do so without prejudice to the parties, and without the payment to the owners or into court of the amount of the award, and decreed that the railway company pay to the Damrons the sum of $2,750.00, upon payment of which its title would stand "confirmed". The instant writ of error is prosecuted to this order.

From the arguments and briefs it appears that the only issue here involves the right of the railway company to dismiss the Damrons after the entry upon the land, and the construction of its railroad thereon under the agreement had between the parties.

Without doubt, the railway company's right to dismiss depends upon whether title vested. Prior to the vesting of title, a condemnor may dismiss the proceeding at any time before entry of final judgment, even after the report of the commissioners, or a jury verdict, if one is had. But coincident with the vesting of title, the right to dismiss ceases. *Chesapeake & Ohio R. Co.* v. *Lane,* 113 W. Va. 51, 166 S. E. 698; *Baltimore & Ohio R. Co.* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868. In the last mentioned case, the compensation ascertained by the commissioners had been actually paid into court, and this Court held that title vested upon such payment under Barnes' Code, chapter 42, section 18 (Code, 54-2-12). Under the last mentioned section of the Code, payment to the property owner or into court, or as provided by Code, 54-2-18, to the clerk thereof, of the amount of compensation fixed by the report of the commissioner or a verdict of the jury, if one be had, made

within three months after the same has been confirmed or ordered to be recorded, vests in the condemnor title in fee simple to the part of the property for which pay-ment was made, if condemnor seeks to acquire the fee, except in case of a public road. Section 12 evidently was designed for the benefit of the condemnor, so that the entry upon the land would not be delayed until the final determination of the proceeding. This section, while primarily for the condemnor's benefit, also protects the property owner. In *Buckhannon & N. R. Co. v. Great Scott Coal & Coke Co.,* 75 W. Va. 423, 83 S. E. 1031, 1034, this court, in applying Code 1913, chap. 42, sec. 20 (Code 1931, 54-2-13) which simply legalizes entry before judgment without vesting title, said that until payment is made after the commissioner's report or verdict of the jury, if there be one, of the amount ascertained, *"the applicant is not entitled to put a foot upon the ground."* (Italics supplied).

Here the agreement would seem to provide the property owners with protection in lieu of the money requirement. Under it the railway company entered and completed the construction of the railroad on the property. Surely the right to payment is waived, and justice requires that the parties be secured to the full extent of their substituted rights. This agreement specifically provided that entry into the land shall be without prejudice to the rights of the defendants. Its evident intendment, read in connection with the petition wherein the railway company prays for the acquisition of the fee simple title to the property and the actual construction of the railroad thereon, is that title in fee simple should vest in the railway company on entry, and then and there the owners should be entitled to the amount of the award, subject to possible adjust-ment, under the statute, during the future course of the proceeding. This is only just and equitable that we should so hold. In passing, we suggest the case of *Chesapeake & Ohio Ry. Co. v. Bradford,* 6 W. Va. 220, cited by the railway company's learned counsel, is not in point with the instant case. There, the record shows that the

parties dismissed were infants who had only a contingent and not a vested remainder in the property as alleged in the petition, and entry was made there without any agreement as in the instant case.

No complaint is made in the railway company's brief as to the amount of the award. However, if counsel intended to assert such position, the answer necessarily lies in the fact that after the voluntary payment to the land company of $12,250.00 for its property rights, the railway company withdrew its claim to a jury trial as to the amount of the $15,000.00 award. It follows that the judgment amount of $2,750.00 to the Damrons should be the sum to which they are entitled. Under the circumstances, no other sum could possibly have been reached. The exceptions to the report having been withdrawn, the award stands invulnerable and the land company, the only real party in interest beside the Damrons, has been satisfied in full. Thus, the Damrons are the only persons who, under any reasonable view of this record, would be entitled to the balance of $2,750.00, and the circuit court so held.

This disposes of all the material questions in this case. Of course, our discussion has proceeded upon the premise that the commissioners' award actually was $15,000.00. This is not questioned by counsel in their briefs, nor would such a position be tenable. Code, 2-2-10 (b) provides: "Words purporting to give a joint authority to three or more persons confer such authority upon a majority of them, and not upon any less number." This rule applies in proceedings in eminent domain. 2 Lewis, Eminent Domain, 3d Ed., section 637; 2 Nichols, Eminent Domain, 2d Ed., 1126; *Norfolk & W. R. Co.* v. *Virginian Railroad Co.*, 110 Va. 631, 66 S. E. 863. And in this state it has been held to apply in the case of statutory arbitrators. *Wheeling Gas Company* v. *Wheeling*, 8 W. Va. 320, 322.

We therefore affirm the order of the circuit court.

*Affirmed.*