[Civ. No. 2119. Fourth Appellate District.—November 16, 1937.]

T. A. GAUME et al., Respondents, v. CITY OF REDLANDS (a Municipal Corporation) et al., Appellants.

Walter J. Hartzell, Hill, Morgan & Bledsoe and Kenneth K. Wright for Appellants.

Wilson & Coughlin for Respondents.

MARKS, J.—This is an appeal from a judgment perpetually enjoining defendants from making or issuing any assessment to pay for the acquisition of property in the City of Redlands in a street opening proceeding.

Plaintiffs own property within the exterior boundaries of the district formed to pay the cost of the improvement. The City of Redlands is a municipal corporation and the individual defendants are the members of its city council.

On November 15, 1933, by resolution number 513, the city council of the City of Redlands initiated proceedings under the Special Assessment Investigation, Limitation and Majority Protest Act of 1931 (Stats. 1931, p. 1372, as amended Stats. 1933, p. 1987) to determine the cost of the acquisition of property for widening three streets in the city to form a portion of the state highway leading into Imperial Valley and points east. We will refer to this act as the Debt Limitation Act. The resolution contained the following:

"3. That the amount and portion of the cost and expense of the proposed acquisition proposed to be paid by the City of Redlands from its proportion of the State Gas Tax hereafter coming to the City of Redlands is the sum of $20,000.00; and the proportion of the cost and expense of said acquisition

proposed to be paid by the Department of Public Works of the State of California, Division of Highways and from other sources is a sum in excess of $160,000.00.

"4. The Statute under which it is proposed to conduct proceedings for the proposed acquisition is the Street Opening Act of 1903, with bonds to be used as authorized under the Street Opening Bond Act of 1911."

The proceedings were completed and it was found that the estimated cost of the proposed acquisition, less the amounts to be contributed towards this cost by public agencies, was well within the requirements of the Debt Limitation Act.

On February 14, 1934, the city council initiated proceedings for acquiring the necessary property for the improvements under the Street Opening Act of 1903 (Stats. 1903, p. 376, as amended) by passing its ordinance of intention, number 773. This ordinance contained the following:

"Section 5. That the estimated expense of said improvement, inclusive of the incidental expenses of the proceedings under this ordinance of intention and inclusive of the incidental expenses incurred under the 'Special Assessment Investigation, Limitation and Majority Protest Act of 1931', as amended, is the sum of One Hundred Forty-five Thousand Seven Hundred Thirty-two and 56/100 Dollars ($145,732.56), exclusive of damages to buildings attached to and a part of the property to be acquired, the removal of which buildings and/or remodeling of the same is to be done and performed by the Department of Public Works of the State of California, Division of Highways.

"That it is further ordered and determined that the City of Redlands will pay a portion of the cost and expenses of said improvement, to-wit: the sum of Twenty Thousand Dollars ($20,000.00), such payment to be made from its proportion of the State Gas Tax hereafter coming to the City of Redlands."

It should be particularly noted that in resolution number 513, and in all other proceedings taken under the Debt Limitation Act, it was recited that the city would contribute $20,000 to the costs of the acquisition of property, and the state and other sources would contribute not less than $160,-000. In the report of the estimated costs under this proceeding there were included items totaling $106,429 for

"Damages to improvements", "Damage to leases", and, "Moving costs not included in other items".

In the street opening proceedings the donation by the City of Redlands was set forth at $20,000, but the donation of $160,000 was not particularly set forth. Instead, it was recited that the damage to buildings and the cost of their removal or remodeling was to be paid by donations of state funds and from other sources. This was carried through all of the street opening proceedings. This cost was actually paid from these donated funds. Herein lies the source of the present litigation. Our statement of facts will therefore be limited to those bearing on this variance between the two proceedings and such others as may be necessary to a proper understanding of this issue. No other defect in either proceeding is pointed out either by counsel or by the trial judge in the findings. We will therefore assume that in all other respects both proceedings are regular and legally sufficient.

On March 21, 1934, the city council of the City of Redlands passed its ordinance number 773-A in which it directed the city attorney to institute an action to condemn the property described in ordinance number 773 as necessary to be acquired for the public improvement. This action was instituted and proceeded to trial. The findings of fact were signed on September 27, 1935, and an interlocutory judgment was rendered. In the findings the damages to each parcel of property, all, or any part of which was to be condemned, was set forth. Just prior to the list of the respective owners and the respective damages appears the following:

"Wherever in the following portions of this paragraph under the parcels numbered 1 to 57, both inclusive, the words 'Part Taken' are used they shall mean 'the value of each parcel of property sought to be condemned and all improvements therein pertaining to the realty', as to Parcel No. 29, but not including improvements as to the remaining parcels, . . . ."

The total damages awarded, including damages to improvements on parcel number 29, but exclusive of damages to improvements on all other parcels, was $131,657.

The street superintendent of the City of Redlands made his report of assessment which may be summarized as follows:

Damages awarded in court action..............$131,657.00
Interest from date of order for immediate posses-
 sion .................................... 17,542.95
"Cost of removing, remodeling and/or rearrang-
 ing improvements" on parcels of condemned
 land .................................... 121,457.28
Defendants' costs............................. 47.20
Various expenses of proceeding................ 12,081.62
 

 Total costs and expenses..............$282,786.05
Less paid by state for removing remodeling and/or
 rearranging improvements.................$121,457.28
To be paid by City of Redlands................ 20,000.00
Gas tax allotment............................ 60,000.00
Less amount awarded for parcel No. 29 covered in
 allotment by state....................... 4,121.88
 

 Total credits........................$205,579.16
 

Balance (Total assessment)..................... $77,206.89

The foregoing report was filed on January 4, 1936. This action to restrain the assessment followed on February 10, 1936.

 The theory of plaintiffs, adopted by the trial court in its findings and judgment, is that since the interlocutory judgment in the condemnation action awarded damages in the total sum of $131,657, and since, in the proceedings under the Debt Limitation Act it was stated that a sum in excess of $180,000 would be donated to pay the cost of the acquisition, the total cost should have been paid out of the donations, leaving nothing to be assessed on the property owners in the assessment district.

This theory fails to take into consideration the fact that the estimated damages in the Debt Limitation Act proceeding included damages to the improvements while the damages awarded in the condemnation proceeding did not include damages to these improvements except those on parcel number 29, and the further fact that in the street opening proceedings, of which the condemnation suit was a part, there had been actually paid, or made available for payment by public agencies, on the cost of the acquisition of property a sum in excess of the $180,000 donation mentioned in the Debt Limitation Act

proceedings. The question thus presented seems to be a novel one in California jurisprudence.

■ Damages to buildings are a necessary part of the compensation that must be paid to a property owner when his property is condemned and taken for a public use. In *City of Los Angeles* v. *Klinker*, 219 Cal. 198, at page 206 [25 Pac. (2d) 826, 90 A. L. R. 148], it is said:

" 'Where land is condemned for public uses, the value of buildings or other improvements and fixtures on the land must be considered in determining the owner's compensation.' (20 Cor. Jur., p. 799.)

" 'When fixtures become part of the realty, if the land on which the building stands is taken in whole or in part for the public use, the owner is entitled to have the fixtures considered in determining the amount of his compensation.' (10 R. C. L., 142.)''

We are not greatly assisted in the solution of the problem confronting us by any other cases cited by counsel or by any which we have discovered in the course of our investigation. Therefore, with the foregoing rules of law in mind, we must turn to three acts of the legislature which we believe must be decisive of the question here involved. They are the Debt Limitation Act, the Street Opening Act of 1903, and an act which we will call the State Fund Allocation Act. (Stats. 1927, p. 1562, as amended; Stats. 1933, p. 2029.)

■ The purposes and scope of the Debt Limitation Act are thus clearly and briefly set forth in its title:

"An act to limit the amount of special assessments for public improvements and acquisitions of property for public purposes; to provide for a preliminary investigation, report and hearing upon proposed public improvements and acquisitions of property for public purposes where the cost of such improvements or acquisitions is to be paid in whole or part by special assessments; to provide a basis for valuation of property for the purpose of establishing a special assessment limitation, and to authorize the payment of a part of the cost of such public improvements and acquisitions of property from any available public fund where a part of such cost is paid by special assessment on benefited property, and to provide that a majority protest shall be a bar to any proceeding.''

A study of this act leads us to the conclusion that it was intended as a special proceeding to limit the amounts of assessments that may be levied in local improvement proceedings and thereby prevent former abuses which have occurred in levying assessments on properties far in excess of actual values. The purposes of the act were fully accomplished when it was determined that the assessments would not exceed prescribed limits.

The Debt Limitation Act proceeding was no part of the local improvement proceeding which was to follow except that it imposed a continuing limitation on the maximum amount of the assessments to be levied, and through that limitation, a continuing limitation on the cost of the public improvement except in certain particulars with which we are not here concerned. The act accomplished its purpose when those results were achieved, and, except in the particulars specified, did not carry forward or become any part of any future proceeding. The act required that donations to the cost of the improvements be set forth. This was done. It further provided that the amount to be assessed on the property be not more than one-half of its actual value. This provision was complied with. There seems to be no legal ground to be urged to the validity of this proceeding.

The purpose of the Street Opening Act of 1903 is to permit public agencies to acquire private property for public use, to compensate owners of private property for the property taken, and for their severance damages, and to provide a fund by way of assessment of property benefited to pay these damages and the legitimate costs of the proceeding. Those purposes were all accomplished in the proceeding under consideration here if the money contributed by the state agencies could be lawfully used to pay some of the damages of the acquisition by private contract with property owners independent of the street opening proceedings including the condemnation suit.

Generally speaking, the State Fund Allocation Act permits state agencies to allocate and use state funds ''for the acquisition of rights of way'' for state highways. (See secs. 2, 3, 5, as amended in 1933.) Section 5 contains the following:

''The Department of Public Works is hereby authorized to acquire the necessary land or rights of way by purchase, condemnation or donation for any said highway or the legis-

lative body of the municipality may acquire the necessary land or rights of way by purchase, condemnation or donation and title to any said land or right of way may be taken in the name of the State or in the name of the municipality.''

■ Thus it is quite apparent that the state itself, or through a municipality, may acquire rights of way by contract of private purchase from property owners. This power is expressly granted by the legislature in the provisions of the State Fund Allocation Act just quoted. We can see no valid reason why the state cannot be permitted to acquire parts of a needed right of way by purchase and the balance by condemnation. If this can be done there should be no valid objection to permitting the state to acquire by private contract of purchase the part of the right of way consisting of improvements, and there should be no objection to acquiring the balance of the right of way by condemnation. There should be no objection to the condemnation of this balance of the right of way through local improvement proceedings instead of the exercise of the power of eminent domain through direct condemnation suit. ■ Acquisition of private property for public use through such proceedings has been a recognized and approved right and an approved method of procedure for so many years that it cannot now be questioned. A property owner should not be heard to complain if he ultimately receives the full amount of the damage he suffers. No more should a property owner be permitted to complain if he is required to pay no more than his just and legal share of the improvement cost through just assessment of the benefits which it confers. It should make no difference to him through what channel the money donated towards the cost of the improvement flows if the cost to him is proportionately reduced by the donations.

This is exactly what was done in the instant case. The state through one of its agencies contracted with private property owners and acquired part of the right of way by private purchase. While it did not actually pay for the buildings on the property to be condemned and thus take title to them, it contracted with the owners and paid for their removal and remodeling to fit the new boundaries of the proposed street. This is but one means of accomplishing the end of clearing the street of obstructions and making it fit for public use and probably at a considerable saving to the state. If

the buildings had been acquired by purchase and title taken by the state the cost of demolition or removal would still have to be paid by the state.

All of the local improvement proceedings under the Street Opening Act of 1903 carried notices to the property owners that this method would be followed in paying damages to improvements outside of the local improvement proceedings. In the condemnation action the findings fixed values of the property taken and severance damages to the land alone and did not include improvements except on lot number 29. The property owners were fully informed of the methods to be used and were not misled in any particular. It is not suggested that any contract with a property owner was unfair or that any one received undue benefits. More than the $160,000 promised to be contributed by the state and other sources in the Debt Limitation Act proceeding was actually contributed and expended to acquire portions of the right of way. The burden on the property within the assessment district was lessened by that amount. Every promise or representation to the property owners made in either proceeding was faithfully kept.

While there is a requirement in the Debt Limitation Act that the amount of donations be set forth there is no requirement in that act that these donations be used to pay the judgment in the condemnation action instituted under the Street Opening Act of 1903. There is no requirement in that act that all moneys donated be used to pay the judgment in the condemnation action. In the proceedings under the Street Opening Act of 1903 it was only necessary to specify the part of the donations to be used to pay on this judgment. This was done. Under the State Fund Allocation Act the state is authorized to use its money to acquire rights of way by purchase. There is no requirement in any of the three acts compelling the state to expend its money through the local improvement proceedings or in payment of any judgment rendered therein. As the state donation was not included in the local improvement proceedings and as the improvements, except those on lot number 29, were specifically excepted from the damages fixed in the condemnation action, the state was free to use its donated funds to acquire this portion of the right of way by private contracts with the property owners.

474

■ Respondents strongly urge that the cost of "removing, remodeling and/or rearranging improvements" for which the money donated by the state was largely used, was an expense of improving the right of way after title had passed from private ownership and not an item of cost of the right of way; that therefore the property owners had been misled in the Debt Limitation Act proceeding by the statement that in excess of $160,000 would be donated by the state and other sources to be applied on the cost of the acquisition. There might be some merit in this argument had the court included in the damages awarded, damages to improvements. It did not do so. Those damages were specially excepted with the statement that they would be paid by the state outside of the condemnation proceedings. The property owners were fully advised of this fact at all stages of the proceedings under the Street Opening Act of 1903. They were not misled.

■ As there were no representations or statements in any of the proceedings under the Street Opening Act of 1903 that the state donation would be used to pay the judgment in the condemnation proceedings and as the right of acquiring the portion of the right of way represented by the improvements was reserved to the state in those proceedings, the manner of acquisition by the state was largely a matter of discretion on the part of the representatives of the state. As the law conferred on them the right to acquire this property by purchase they were exercising a discretion vested in them by law in acting as they did. "Equity will not restrain one from doing, in a proper manner, that which the law authorizes him to do." (14 Cal. Jur. 206, sec. 22, and cases cited.)

The judgment is reversed with directions to the trial court to amend its findings in accordance with the views herein expressed and enter judgment for defendants.

Barnard, P. J., and Jennings, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 14, 1938.