STATE OF WEST VIRGINIA BY
THE STATE ROAD COMMISSION

*v.*

ROBERT LEE BOYD, *et al., Trustees*

(No. 9838)

Submitted January 14, 1947. Decided February 25, 1947.

*Arden Trickett,* Counsel for the State Road Commission, and *C. W. Strickling,* Special Assistant Attorney General, for plaintiff in error.

*Frank R. Lyon, Thomas B. Jackson* and *Jackson, Kelly, Morrison & Moxley,* for defendants in error.

RILEY, JUDGE:

In order to straighten, grade, widen and improve a public road in Kanawha County, known as the Pratt to Hansford road, and designated as a part of the primary road system of the State, the state road commission instituted in the Circuit Court of Kanawha County this proceeding in eminent domain for the purpose of acquiring a right of way containing 2.107 acres, through property owned by Robert Lee Boyd and others, Trustees of the Diocese of West Virginia of the Protestant Episcopal Church in the United States of America, successor in title to Sheltering Arms Hospital, a corporation. The commissioners appointed by the court allowed defendants, as compensation for the land actually taken, as well as damages to the residue, less all benefits, the sum of ten hundred twenty-seven dollars. Defendants filed exceptions to this report, as shown by the order of the circuit court entered on August 7, 1940. The defendant landowners and the petitioner agreed, as shown by an order of September 15, 1945, that the defendants would accept and the petitioner would pay the sum of ten hundred twenty-seven dollars, awarded by the commissioners, as compensation for the land actually taken for right of way purposes, which order further provided for a trial by jury to determine the amount of just compensation to defendants for the damages to the residue, beyond the benefits which would be derived in respect to said residue. To a judgment of the circuit court in the amount of twenty thousand dollars, with interest from March 1, 1942, the date fixed by the jury as the actual time of entry by petitioner upon the residual property of defendants, this writ of error is prosecuted.

The Sheltering Arms Hospital, a corporation formed for the purpose of building, maintaining and operating a general hospital with the financial backing of the Diocese of West Virginia of the Protestant Episcopal Church, acquired 12.9 acres, of which the property involved in this proceeding is a part. And about the year 1885 erected a hospital on this tract of land and operated the same until the year 1907 or 1908, when new hospital buildings were constructed thereon. Later a nurses' home was erected and operated in conjunction with the main hospital building. The main building was constructed with thick, solid concrete walls, not reinforced with steel or iron, with a heavy tile roof which construction was in accord with the building practices of that day.

In 1908 when the then new building was in operation there were no other adequate hospital facilities in that part of West Virginia, and for a number of years the hospital served all of the coal fields of the Kanawha, New River, and Winding Gulf valleys without competition. In 1922 or 1923 the hospital was closed because of other hospitals located in the cities of Montgomery and Charleston, which had been established between the years 1908 to 1922, with which the Sheltering Arms Hospital could not for economic reasons compete. After the closing of the hospital all of its equipment, plumbing and fixtures were removed, and the empty buildings were cared for by various caretakers. About 1927 the nurses' home was torn down. In 1940 the state road commission, under Code, 54-2-14, entered upon the land sought to be acquired and proceeded with the improvement of the road. Though there is no evidence in this record of negligent or improper work, the construction resulted in slides in four acres of the residue of the land of such magnitude that the main hospital building was so completely destroyed that the ruins had no salvage value.

At the trial the defendants introduced evidence over petitioner's objection, respecting the reproduction cost

of the main hospital building, less depreciation. This testimony was to the effect that when constructed in 1907 and 1908 the building cost $84,000, and that at the price levels of 1940 the cost would have been two and a half to three times as much as the original cost. This evidence tended to show that the annual depreciation should be calculated from one and a third per cent to two per cent a year. The defendants offered no evidence to show that the property damaged, inclusive or exclusive of the hospital building, had any value at any time. Two witnesses for the State, however, Richard Higgins and W. A. Abbitt, testified that before the "taking" of the residue of the property as the result of the construction of the road, the land was worth two hundred dollars an acre, and after the construction of the road the acreage worth was one hundred fifty dollars an acre.

This record discloses decisively that the hospital building at the time of its destruction was useless from an economic viewpoint for hospital purposes. There is no evidence to the effect that the building immediately prior to its destruction had any market value or could serve any definite useful purpose.

At the trial the court, over petitioner's objections, gave defendants' instructions Nos. 2 and 3. Instruction No. 2 told the jury to find the just compensation to defendants and in doing so the jury should consider every element of value disclosed by the record, and should give weight to the evidence as to the cost of the hospital building, the reasonable replacement cost thereof, less ordinary depreciation and less additional depreciation, if any, due to non-use and non-occupancy of the property as a hospital, taking into consideration the state of repair in which the property was kept, and less also the reasonable salvage value of the plumbing which was removed from the building, and considering also the value of the property to defendants based on its most advantageous use. Instruction No. 3 told the jury that in ascertaining a just compensation for the land not

taken and the buildings situate thereon they should consider all the evidence in the case, including that which the jury had acquired by its view of the premises.

The court refused petitioner's instructions which told the jury that in arriving at the amount of just compensation they should measure the actual damages, if any, by the difference between the fair market value of the residue of the property as of the date of the original taking, August 7, 1940, and the fair market value thereof at the time of the trial, and further the instructions would have told the jury that "market value" is the price for which the land and property involved could be sold in the market by a person desirous of selling to a person wishing to buy, "both freely exercising prudence and intelligent judgment as to its value, and unaffected by compulsion of any kind, such value to be determined by the same considerations that enter into a sale between private parties, namely, the availability of the land and property for all valuable uses to which it is adapted, having regard" to the reasons and circumstances which prompted the closing of the hospital in 1922 or 1923, and the fact that it has not been since operated or used for hospital or any other purpose, and has since been vacant but kept in a reasonable state of repair.

Upon this state of the record the petitioner asserts that the trial court erred: (1) In permitting evidence on behalf of defendants as to the reproduction cost, less depreciation of the hospital building; (2) in giving defendants' instructions Nos. 2 and 3; and (3) in refusing the State's instructions as offered, and in modifying the same so as to substitute "the fair and reasonable value" for the fair market value of the property.

As heretofore noted, this case does not involve the question of compensation for land actually taken in the construction of the road or damage to the residue as the result of negligent or improper construction, which, under the holding of this Court in *Buckhannon & Northern Railroad Co.* v. *Great Scott Coal & Coke Co.,* 75

W. Va. 423, 83 S. E. 1031, would not be recoverable in eminent domain. The basic question presented on this appeal is whether the landowners are entitled to damages resulting from the total destruction of the hospital building. Code, 54-2-9, as amended by Chapter 28, Acts of the West Virginia Legislature, Regular Session, 1933, provides that a landowner whose land is sought to be acquired in fee by eminent domain, is entitled to just compensation for so much thereof as is proposed to be taken, and for damage to the residue beyond all benefits to be derived in respect to such residue, from the work to be constructed or the purpose to which the land to be taken is to be appropriated. See *State of West Virginia, etc.* v. *Sanders,* 128 W. Va. 321, 36 S. E. 2d 397. In this case the landowners have been fully compensated for the land actually taken, and the landowners' only claim here is that they are entitled to recover the sum of twenty thousand dollars, with interest, under the judgment of the circuit court for the destruction of the hospital building. This position is asserted notwithstanding that at the time and immediately before its destruction the hospital building had no value for hospital purposes for economic reasons which were beyond the control of the landowners and their predecessors in title. There is no evidence in this record which would indicate that at the time of its destruction the building could have been used, or had any market value, for any other purpose. In the case of *Board of Education* v. *Kanawha & Michigan Railroad Co.,* 44 W. Va. 71, 29 S. E. 503, this Court held in point 2 syllabus that where a public school house lot is taken under the right of eminent domain by a railroad company, the damages to the residue "* * * is the difference between the value of the property for school purposes before the construction of the road and its market value for any purpose after the construction, if its value for school purposes has been wholly destroyed, * * *." In *United Real Estate Co.* v. *McDonald,* 140 Mo. 605, 613, 41 S. W. 913, 914, the Missouri Court said: "It is not a presumption, either *prima facie* or conclusive, that a building necessarily adds a definite amount to the value-

of property in a city. So much depends upon the purposes for which the property is to be purchased and the character of the buildings. A building which would be valuable in one locality would be a positive detriment in another locality, as, for instance, a dwelling house in an exclusively business district." In *Blair* v. *City of Charleston*, 43 W. Va. 62, pt. 3 syl., 26 S. E. 341, this Court held: "The measure of damages for injury to property from change of a street grade line is that sum which will make the owner whole; that is, the diminution of the market value from the change. If the market value is as much immediately after as immediately before the change, no damages can be recovered." Under these holdings, we are of opinion that the landowners under the present state of the record are not entitled to any award of damages for the destruction of the building. It follows that the trial court erred in permitting defendants to introduce evidence as to the reproduction cost, less depreciation, of the building, and such introduction of evidence, in our opinion, constituted reversible error. Our holding in this regard, however, should not be deemed to preclude the landowners, in the event a new trial is had, from introducing evidence, if such be available and otherwise admissible, to establish that at the time of the construction of the road the hospital building had a market value for some purpose other than the operation of a hospital. The record being silent in this regard, we have no course open to use other than to reverse the judgment of the circuit court.

The foregoing holding renders moot the assignments of error involving the granting and refusal of instructions.

For the foregoing reasons the judgment of the Circuit Court of Kanawha County is reversed, the verdict set aside, and a new trial awarded.

> *Judgment reversed; verdict set aside;*
> *new trial awarded.*