THE CHESAPEAKE AND OHIO RAILWAY COMPANY

*v.*

ELIZABETH JOHNSON, *et al.*

(No. 10220)

Submitted April 18, 1950.  Decided July 5, 1950.

LOVINS, JUDGE, not participating.

*Fitzpatrick, Strickling, Marshall & Huddleston, George A. Fesenmeier,* for plaintiff in error.

*Daniel W. Ambrose, T. G. Nutter,* for defendants in error.

HAYMOND, JUDGE:

In this eminent domain proceeding instituted in the Circuit Court of Cabell County, the applicant, The Chesapeake and Ohio Railway Company, took by condemnation the rear or northerly thirty by thirty foot portion of Lot 4, in Block 181, owned by the defendant, Elizabeth Johnson, in Addition No. One, in Huntington, Cabell County, West Virginia. William E. Cecil, described as the husband of Elizabeth Johnson, and Nora Prince, widow, Nora Prince, administratrix of the personal estate of James G. Prince, deceased, and Twentieth Street Bank, a corporation, trustee, former holders of liens upon the real estate involved, were also made defendants in the proceeding. By order entered May 13, 1948, the circuit court held that the applicant had the lawful right to take the property sought to be acquired by it, and appointed commissioners to ascertain the compensation to which the landowner is entitled, including damage to the residue beyond all benefits to accrue from the work to be constructed. The commissioners awarded $860.00, and the applicant, upon giving bond, took possession of the property. The landowner, Elizabeth Johnson, excepted to the report of the commissioners and the question of compensation was submitted to a jury. The jury returned a verdict of $1,850.00 in favor of the defendant Elizabeth Johnson, the land-

owner. The court overruled the motion of the applicant to set aside the verdict and grant a new trial and, by order of February 14, 1949, entered judgment upon the verdict. To that judgment this Court awarded this writ of error upon the petition of the applicant.

To reverse the judgment, the applicant assigns as error the action of the trial court: (1) In admitting evidence offered by the defendants of the undepreciated reproduction cost of a garage building on the land taken by the applicant; (2) in refusing to permit the applicant to introduce evidence of voluntary sales to it of other property similarly situated in the immediate vicinity of the property taken in this proceeding; and (3) in refusing to give an instruction, designated Petitioner's Instruction No. 1, offered by the applicant.

The dimensions of Lot 4, in Block 181, in its entirety, are thirty feet in width and one hundred and eighty five feet in depth and the lot is located between 18th Street and 19th Street in the City of Huntington. The land fronts on 8th Avenue and extends back to an alley in the rear. The front portion is improved with a dwelling house. On the rear portion taken by the applicant was a three stall concrete block garage which the applicant removed or destroyed before the case was tried to a jury. In consequence, no view by the jury was had of the premises before the garage was destroyed. There was also a small chicken house, not attached to the garage, on the portion of the land taken by the applicant.

Upon the trial the defendants offered the testimony of four witnesses and the defendant, Elizabeth Johnson, as to the value of the portion of the lot and the garage taken by the applicant. Two of these witnesses and the defendant respectively testified that the market value of the property taken was $2,500.00, $2,600.00 or $2,700.00, and $2,700.00 or $2,800.00. Two witnesses produced by the applicant respectively testified that the market value of the property condemned by it was $660.00 and $800.00. Some of the witnesses for the respective parties gave sep-

arate values for the land and the garage which they included in their opinion of the value of the property, and one of the witnesses who testified in behalf of the defendants included in his opinion of the value of the property taken the replacement value of the garage, without any reference to depreciation, and the value of the lot. Two of the four witnesses for the defendant, one an architect and the other an experienced building contractor, did not express an opinion as to the market value of the portion of the lot and the garage, but testified, over the objection of the applicant, to the undepreciated reproduction cost of a new building to be constructed of similar materials and to be of the same size as the garage taken and removed by the applicant, which had been erected about twenty years before the institution of this proceeding. They did not know the market value of the property. The architect who was acquainted with the garage testified, without making any allowance for depreciation, that his estimate of the cost of constructing a new building was $1,909.08. The contractor had never seen the garage taken by the applicant but, at the request of the defendant, Elizabeth Johnson, he made an estimate of the cost of a new structure of the same kind upon information given to him by her of the character of the former building. In his opinion, which made no allowance for depreciation, the construction cost of a new building to replace the garage taken and removed was $2,213.45 at the time of the taking. Upon the conclusion of the examination in chief of this witness, the applicant moved to strike his testimony. The court overruled the motion to strike but stated: "I will sustain the motion if it is not connected up." One of the attorneys for the defendant replied: "We will connect it up, your Honor". No evidence for that purpose, however, was subsequently offered by the defendants and the foregoing testimony of the witness was permitted to go to the jury. At the conclusion of the evidence introduced by the defendants, the court overruled a motion by the applicant to exclude all the evidence of the value of the property introduced by the defendants except the testimony of the defendant Elizabeth Johnson. After the evidence intro-

duced in behalf of the respective parties had been completed, the jury viewed the premises in the condition in which they remained after the garage had been removed.

During the trial the defendants made no effort, and introduced no evidence, to prove any damage to the residue; and the applicant did not contend, or offer to prove, that any benefits would accrue to the residue from the work to be constructed upon the land taken. The inquiry as to value was limited to the value of the land actually taken and the garage on that portion of the lot.

In a condemnation proceeding to take a part of a tract or parcel of land, the true measure of compensation to which the landowner is entitled for the land taken and for damage to the residue, is the market value of the land taken, at the time of the taking, and the difference between the market value of the residue of the land not taken immediately before, and the market value of such residue immediately after, the taking of the land appropriated, beyond all benefits which accrue to such residue from the work to be constructed or the purpose to which the land is to be appropriated; and such benefits are to be determined as of the time of such taking and are to be considered and included in the latter value. *Strouds Creek and Muddlety Railroad Company* v. *Herold,* 131 W. Va. 45, 45 S. E. 2d 513; *State, by State Road Commission* v. *Evans,* 131 W. Va. 744, 50 S. E. 2d 485. See also *Tennessee Gas Transmission Company* v. *Fox,* 134 W. Va. 106, 58 S. E. 2d 584; *State, by State Road Commission* v. *Boyd,* 129 W. Va. 715, 41 S. E. 2d 665; *State, by State Road Commission* v. *Sanders,* 128 W. Va. 321, 36 S. E. 2d 397.

In *Baltimore and Ohio Railroad Company* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868, on the question of damage to a building of the landowners apparently located on other property adjoining the land taken, this Court said:

"In ascertaining the damages to defendants' building it was proper to take into consideration its value, the more valuable it was the greater would be the damage to it; and, in ascertaining its value, evidence of the original cost

of its construction could properly be considered, notwithstanding it had been built some years before this proceeding was instituted, but the probative value of such evidence depends upon the extent of deterioration of the building, if any, and the comparative cost of labor and material now, and at the time the building was erected."

In *Gauley and Eastern Railway Company* v. *Conley*, 84 W. Va. 489, 100 S. E. 290, 7 A. L. R. 157, this Court held that the admission of evidence of the cost of the erection of a new barn to be used for business purposes on a different site from that on which an existing barn taken by the applicant in a condemnation proceeding was located was improper, and in the opinion used this language: "Evidence of the cost of construction of a new barn on another site was improperly admitted also. * * *. The evidence of the cost of erection of the new barn is too uncertain as an element of proof of the value of the old one."

In *State, by State Road Commission* v. *Boyd,* 129 W. Va. 715, 41 S. E. 2d 665, the holding was that the trial court, in an eminent domain proceeding, committed error in admitting evidence of the reproduction cost, less depreciation, of a hospital building of no value for hospital or other purposes, located on the residue of the land through which the applicant had taken a right of way for a public highway, and which building had been destroyed by the applicant in the proper construction of the highway.

In *State, by State Road Commission* v. *Evans,* 131 W. Va. 744, 50 S. E. 2d 485, the applicant, in relocating and improving certain public highways, took approximately sixty per cent of the total area of residential land of the owner on which were located a dwelling house and a garage. The garage was within the limits of the land taken for the right of way for the highway. As an item included in the market value of the land taken, the landowner introduced evidence of the cost of reconstructing the garage. On the question of the admissibility of such evidence this Court, in the opinion in the *Evans* case, used

this language: "* * * it is not error to permit a witness to analyze the figure given by him as the market value and in doing so to state his opinion as to the value of the items going to make up the whole. Consequently the cost of reconstructing the garage, by itself and standing alone, would not have been properly admitted as a distinct item of damages. However, as one of the ingredients going to make up market value of property taken, we believe that it was admissible. As a separate element of recovery it should have been excluded, but if used to sustain and bolster evidence of market value given on behalf of the defendant, as here, we believe that its proper relevance is inescapable. * * *. As a means of arriving at the market value of land taken the replacement cost of buildings taken may be shown as enhancing the market value of the land. Except in support of market value its admission is improper in a case in which market value is being considered."

In 29 C. J. S., Eminent Domain, Section 175, the text relating to reproduction or replacement cost of buildings of the owner upon the land taken in condemnation proceedings is in these words:

"Reproduction or replacement costs of buildings or other improvements injured or destroyed when the land on which they are located is taken for a public use may be taken into consideration, particularly where such costs are considered in connection with the age and depreciation of the building or improvement in question, and where the remaining portion of a building where only a part is taken, is of great value and can be reconstructed advantageously.

"There exists, however, authority to the effect that reproduction or replacement costs are not to be considered, this being particularly true as regards such costs when they are not considered in connection with the age and depreciation of the improvement which is taken or injured, or where the improvement which is injured can not be restored to its former condition."

As indicated by the foregoing quotation from the text in 29 C. J. S., Eminent Domain, Section 175, the authorities are not in complete accord with regard to the admissibility of evidence of reproduction or replacement costs of buildings or improvements injured or destroyed when the land on which they are located is taken in condemnation proceedings. In 2 Lewis', Eminent Domain, Third Edition, Section 664, the text contains this statement: "Where property is improved with buildings or other structures the general rule is that the evidence must be confined to the value of the property as a whole and that evidence of the cost of the improvements, or of their structural value or of the cost of reproducting them is not competent." In *City of Los Angeles* v. *Klinker,* 219 Cal. 198, 25 P. 2d 826, 90 A. L. R. 148, in discussing the structural value of a building on land taken in a condemnation proceeding, the Supreme Court of California said: "The general rule is against the admission of this class of evidence for any purpose. The market value of the land, together with the improvements thereon, viewed as a whole and not separately, is the general rule." The present rule recognized by the weight of authority, however, is that reproduction cost with proper allowance for depreciation, which is sometimes designated as structural cost or value, may be introduced in evidence as an element of the market value of the land when the building taken or injured is suitable to the land on which it is located. 18 Am. Jur., Eminent Domain, Section 253; 10 R. C. L., Eminent Domain, Section 124; *In re Newtown Creek Waterway, Borough of Brooklyn and Queens,* 284 N. Y. 493, 31 N. E. 2d 916; *In Matter of City of New York, in re Blackwell's Island Bridge Approach in City of New York,* 198 N. Y. 84, 91 N. E. 278, 41 L. R. A. N.S. 411, 139 Am. St. Rep. 791; *Mississippi State Highway Commission* v. *Hudgins,* 182 Miss. 518, 181 So. 719; *State* v. *Doom,* Tex. Civ. App., 278 S. W. 255; *Mayor and City Council of Baltimore* v. *Himmel,* 135 Md. 65, 107 A. 522; *City of St. Louis* v. *Turner,* 331 Mo. 834, 55 S. W. 2d 942.

In 1 Nichols on Eminent Domain, Second Edition, Sec-

tion 227, page 694, the author uses this language: "The proper measure is the market value of the land with the buildings upon it, and the owner therefore receives nothing for the buildings unless they increase the market value of the land. Accordingly evidence of the structural value of the buildings is not admissible as an independent test of value. When however it is shown that the character of the buildings is well adapted to the location, the structural cost of the buildings, after making proper deductions for depreciation by wear and tear, is a reasonable test of the amount by which the buildings enhance the market value of the property."

In condemnation proceedings the value of improvements on the land taken may not be proved or shown separately and apart from the value of the land. 2 Lewis', Eminent Domain, Third Edition, Section 726; 18 Am. Jur., Eminent Domain, Section 253; 10 R. C. L., Eminent Domain, Section 124; *Hervey* v. *City of Providence,* 47 R. I. 378, 133 A. 618; *Devou* v. *City of Cincinnati,* 6th Cir., 162 Fed. 633; *City of Chicago* v. *Callender,* 396 Ill. 371, 71 N. E. 2d 643; *City of Los Angeles* v. *Klinker,* 219 Cal. 198, 25 P. 2d 826, 90 A. L. R. 148; *Saathoff* v. *State Highway Commission,* 146 Kan. 465, 72 P. 2d 74.

In the opinion in the case of *City of Chicago* v. *Callender,* 396 Ill. 371, 71 N. E. 2d 643, in which was involved the question of damages resulting from destruction of a part of a building on the land taken, the Supreme Court of Illinois used this language: "The law of eminent domain contemplates that where private property is taken for a public use, the owner is entitled to the amount of money necessary to put him in as good financial condition as he was with the ownership of the property at the time the petition was filed. Nothing short of that amount conforms to the constitutional requirements of just compensation. He must be left no richer and no poorer than he was at the time the petition was filed." And in a later paragraph of the opinion the Court said: "The question for the jury was the fair cash market value of the land with the building on it, as a whole. The compensation to

be allowed for the property was the value of the land as land with all the improvements on it. The separate value of the buildings may only be considered as it affects the value of the land. While replacement cost of buildings is one element which a witness may take into consideration for the purpose of arriving at his estimate of the value of the land, it is not admissible for the purpose of showing the value of the buildings separate and apart from the land itself. The value of buildings may be considered only in so far as it affects the value of the land. Buildings may not be valued separately. *Department of Public Works and Buildings* v. *Hubbard*, 363 Ill. 99, 1 N. E. 2d 383." In *Strouds Creek and Muddlety Railroad Company* v. *Herold*, 131 W. Va. 45, 45 S. E. 2d 513, this Court, in discussing the pronouncement that the market value of land includes all its components and applies to the land in its entirety, said: "Compensation for land should be ascertained and determined on the basis of its value at the time it is taken or damaged. All of its components may be considered in arriving at the value of the unit, the land itself, but none of them, when not separately owned, may be given an independent value apart from the land as land. With respect to land which contains coal, oil, gas and other minerals, in place and as to which there has been no severance of title, the present existence, character and state of development of these components may be established, but they may not be valued separately from the land of which they are a part." The principle set forth in the foregoing quotation applies, of course, to land and buildings and improvements upon it.

The just compensation to be awarded in a condemnation proceeding in which land improved with a suitable building is taken in its entirety is the market value of the land as enhanced by the building. The two together constitute the land as a single unit; and the landowner is entitled to recover the market value of the land taken which includes the amount which the building contributes in enhancing the market value of the land itself. See *United States* v. *Certain Lands located in Town of Hempstead*,

*Nassau County*, 43 Fed. Supp. 418; *Devou* v. *City of Cincinnati*, 6th Cir., 162 Fed. 633; *City of Chicago* v. *Callender*, 396 Ill. 371, 71 N. E. 2d 643; *City of Los Angeles* v. *Klinker*, 219 Cal. 198, 25 P. 2d 826, 90 A. L. R. 148; *Hervey* v. *City of Providence*, 47 R. I. 378, 133 A. 618; *Mayor and City Council of Baltimore* v. *Himmel*, 135 Md. 65, 107 A. 522; *City of St. Louis* v. *Turner*, 331 Mo. 834, 55 S. W. 2d 942; *In Matter of City of New York, in re Blackwell's Island Bridge Approach in City of New York*, 198 N. Y. 84, 91 N. E. 278, 41 L .R. A. N.S. 411, 139 Am. St. Rep. 791; *Mississippi State Highway Commission* v. *Hudgins*, 182 Miss. 518, 181 So. 791; *Cumbaa* v. *Town of Geneva*, 235 Ala. 423, 179 So. 227; *Gaume* v. *City of Redlands*, 23 Cal. App. 2d 464, 73 P. 2d 917.

The sound rule to be applied to reproduction or replacement cost of a suitable building or improvement taken or destroyed, considered as part of the land itself, is that it may be given in evidence as one of the elements which is included in the market value of the land taken, if such cost is considered in connection with the age of such building or improvement, and is depreciated to the extent that it will equal or represent the value of the building or the improvement taken or destroyed as part of the market value of the land taken. The reproduction cost, without allowance for depreciation, however, should not be considered as part of the market value of the land taken on which the former building or improvement was located at the time of the taking of the land. The landowner should be made whole by compensation for the value of the building taken, as an element of the market value of the land in its entirety, but he should not be awarded the value of a new building for the old building taken or destroyed. He should not be enriched to the extent of the difference between the fair value of the old building and the undepreciated reproduction cost of a new building in its stead.

Under the foregoing rule the evidence of the undepreciated reproduction cost of $1,909.08 and $2,213.45 of a new building to replace the garage taken or destroyed by the

applicant, given by two of the witnesses who testified in behalf of the defendants, as a separate element of recovery, and not as an element of the market value of the land taken, should have been excluded. For the same reason the evidence of the undepreciated reconstruction cost of the garage, introduced by another witness for the defendant who included such undepreciated cost as part of the market value of the land taken, was improperly permitted to go to the jury. The action of the trial court in admitting all such evidence was prejudicial to the applicant and constitutes reversible error.

In so far as statements in the opinion in *State, by State Road Commission* v. *Evans,* 131 W. Va. 744, 50 S. E. 2d 485, appear to be in conflict with the foregoing rule, by failing to mention any allowance for depreciation and in permitting the introduction of evidence of the undepreciated replacement cost of a building taken or destroyed, as an element to be included in the market value of the land itself, on which the building was located, such statements are modified and construed to mean the replacement cost or value of such building, less proper allowance for depreciation, as an element to be included in the market value of the land as enhanced by the building at the time the land is taken.

As bearing upon the market value of the land taken, the price voluntarily paid by the applicant in a condemnation proceeding to another landowner for land similarly situated in the same vicinity is proper evidence and may be considered by the jury if damage to the residue of the land is not involved. *Baltimore and Ohio Railroad Company* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868. The present proceeding, however, is not a proceeding to take the residence and the land of the landowner in its entirety, but was instituted for the purpose of condemning only the rear portion of the entire lot. The failure of the property owner, whether intentional or unintentional, to introduce proof to establish damage to the residue of the lot to support a recovery for such damage, or the failure of the applicant to claim or prove benefits to the residue

from the work to be constructed or the purpose to which the land taken is to be appropriated, did not change the character of this proceeding or convert it into a proceeding to take the land of its owner in its entirety. Though damage to the residue of the land could have been shown by the defendants and benefits to accrue to such residue could have been established by the applicant, neither was in fact done or attempted by the landowner or by the applicant. In consequence no damage to the residue was involved. In the *Bonafield* case, in Point 6 of the syllabus, this Court held: "In ascertaining the value of land taken, the price voluntarily paid, by the applicant, to another land-owner for land similarly situated, is proper evidence to be considered by the jury, where damages to the residue are not involved. Distinguishing *Buckhannon & Northern R. R. Co., v. Great Scott Coal & Coke Co.,* 75 W. Va. 423." The trial court should have permitted the price voluntarily paid by the applicant to other landowners for lands similarly situated, as requested by the applicant, upon a showing that recent sales of such lands had been made to it and that such sales were the result of the free exercise of intelligent judgment and were not influenced by compulsion or fear of litigation. See *Shaw* v. *Monongahela Railway Company,* 110 W. Va. 155, 157 S. E. 170; *The County Court of Mingo County* v. *Chattaroy Coal Company,* 105 W. Va. 321, 142 S. E. 430; *Monongahela West Penn Service Company* v. *Monongahela Development Company,* 101 W. Va. 165, 132 S. E. 380; *Crowl* v. *Buckhannon and Northern Railroad Company,* 92 W. Va. 188, 114 S. E. 521; *The Virginian Power Company* v. *Brotherton,* 90 W. Va. 155, 110 S. E. 546. The applicant, however, offered no evidence of any specific recent sale or sales to it of other land similarly situated, or the circumstances surrounding any such transactions. In the absence of any showing by the applicant of the time of any such sale or the character of the land sold to it in comparison with the land taken in this proceeding, or that such sale was voluntary or free from compulsion, this Court can not determine whether evidence of any sales to the applicant was admissible or, in the present state of the record, disturb the

action of the trial court in refusing generally to permit the applicant to show sales of other lands to the applicant or the price voluntarily paid by it for such other lands.

The final assignment of error relates to the refusal of the trial court to give Instruction No. 1 offered by the applicant. After stating the character of this proceeding and generally describing the property taken by the applicant, the instruction dealt with the measure of compensation to be paid the landowner, market value, and the burden of proof upon the part of the landowner to establish market value as the measure of compensation to which he was entitled. With respect to the measure of compensation, market value, and burden of proof, respectively, the refused instruction would have told the jury, in substance, that the true measure of compensation for the property taken is its market value at the time it was taken, and the difference between the market value of the residue of the property not taken immediately before and immediately after the taking of the property, beyond all benefits to be derived, with respect to the residue, from the construction of the railroad; that the true market value is the price for which the property taken could be sold in the market by a person desirous of selling to a person wishing to buy, both freely exercising prudent and intelligent judgment as to its value, and unaffected by compulsion of any kind, and is a value to be fixed by the jury upon consideration of all the evidence, including the knowledge of the property which it has acquired by its view of the property; and that the burden of proof is upon the defendants to show by a preponderance of all the evidence the market value of the land taken at the time of the taking, and the difference between the market value of the residue not taken immediately before and immediately after the taking of the property, beyond all benefits to be derived with respect to the residue.

The court refused to give the offered instruction because. of its statements with reference to the burden of proof required of the landowner. The instruction was modified by the applicant and given by the court as a

separate instruction which omitted the portion of the original instruction which dealt with the burden of proof. Though the burden rested upon the defendant, Elizabeth Johnson, to prove the market value of the land taken, she did not claim or offer evidence to prove any damage to the residue. She was not required to claim or prove damage to the residue of her property if she elected not to do so and, in the absence of any claim or evidence of such damage, no burden rested upon her to prove damage to the residue in order to recover the market value of the land taken. If she had claimed or undertaken to prove damage to the residue the burden of proving such damage would have rested upon her and the instruction as to that item would have been applicable to the evidence in the case. As there was no evidence of damage to the residue that portion of the instruction would have imposed an obligation which she did not undertake or assume, and was without any basis in the evidence. Instructions must be based upon the evidence; and an instruction which correctly states principles of law but which contains a statement which is not based on the evidence is properly refused. Because there was no evidence of damage to the residue on which to base that portion of the instruction which would have required her to carry the burden of establishing such damage, the trial court did not err in refusing to give the instruction in its original form.

The judgment is reversed, the verdict is set aside, and this proceeding is remanded for a new trial which is awarded to the applicant.

*Judgment reversed; verdict set aside; new trial awarded.*