# CHARLESTON

RAILWAY COMPANY *v.* DAVIS.

Submitted September 14, 1905.    Decided January 23, 1906.

1.  EMINENT DOMAIN—*Compensation—Elements.*
    In a condemnation proceeding every element of value which would be taken into consideration between private parties in a sale of property should be considered in arriving at a just compensation for the land proposed to be taken, and it is proper to consider not only the use for which the land may be maintained at the time, but its adaptability to any and every useful purpose to which it might be put.  (p. 623.)

2.  EMINENT DOMAIN— *Compensation—Elements.*
    As a general rule, compensation to the owner, is to be estimated by reference to the uses for which the appropriated lands are suitable, having regard to the existing business or wants of the community or such as may be reasonably expected in the immediate future.  (p. 623.)

3.  EMINENT DOMAIN—*Compensation—Elements.*
    As to the value of the property taken, the proper inquiry is, what

is the value of the property for the most advantageous uses to which it may be applied? (p. 623.)

4. Eminent Domain—*Appeal—Prejudicial Error.*

In a condemnation proceeding when a false, speculative and conjectural basis of the value of the real estate, proposed to be taken, is permitted to go in evidence to the jury, over the objections of a party, it will be presumed that the objecting party was prejudiced thereby. (p. 629.)

Error to Circuit Court, Mingo County.

Action by the Norfolk & Western Railway Company against T. J. Davis and others. Judgment for defendants, and plaintiff brings error.

*Reversed.*

Joseph I. Doran and Holt & Duncan, for plaintiff in error.

Simms & Enslow, for defendants in error.

McWhorter, Judge:

This is a proceeding by the Norfolk and Western Railway Company for the condemnation of a strip of land 2,567 feet in length, along the bank of the Tug Fork of Sandy river, in Mingo county, being the front of a trace of some five hundred and fifty or six hundred acres, the strip to be taken containing five and two one hundredth acres, the property of T. J. Davis, *et al.*, for its use in the construction of a branch of its railroad. The applicant offered the owners $500.00, which they refused to accept. It then applied to the circuit court of Mingo county for the appointment of commissioners, under the statute, to ascertain the compensation, who reported $900.00 as a fair compensation for the land taken and damages to the residue of the property, which report was excepted to by the applicant "Because the amount fixed by said commissioners in their report as compensation for the land proposed to be taken and damaged is grossly excessive," and demanded that the question of compensation be ascertained by a jury. The defendants also excepted to said report "Because the amount fixed by said commissioners in their report as compensation for the land proposed to be taken and damaged is grossly inadequate," and likewise demanded a jury to ascertain the compensation and damages. Accordingly a jury was impaneled and sworn, and, after hearing the evidence, returned the following verdict: "We

the jury find for the defendants the sum of $2,350 as compensation and damages for the land proposed to be taken as shown and described in the petition and plat filed herein." During the trial the plaintiff objected to certain evidence offered by the defendants and excepted to the ruling of the court in permitting the evidence to go in, and moved the court to set aside the verdict of the jury and grant it a new trial, because the same was contrary to law and without evidence to support it. Which motion the court overruled and entered judgment requiring the plaintiff to pay said sum of $2,350.00, to which plaintiff excepted and procured from one of the judges of this Court a writ of error.

The questions presented for the consideration of this Court are as to whether the amount of compensation found by the jury is so high that it must be attributed to prejudice, partiality, passion or mistake of law or judgment, and whether the court erred in permitting certain evidence to go to the jury as claimed by plaintiff's counsel. It is conceded, as well as proved, that the land taken for the right of way being a strip eighty feet wide, except for a distance where a fill was made it is enlarged to one hundred and forty feet, is rough hillside land wholly unfit for cultivation, and the evidence shows that between the right of way and the river is a strip, the most of which is bottom land, of about ninety feet in width, which is, by the road, severed from the main body of the tract of land out of which the right of way is taken. There are two producing gas wells on the land outside of the right of way proposed to be taken, one within about ten feet of the right of way, the other about two hundred feet up Lower Burning Creek from its mouth, so that the well must be within one hundred feet, or less of the right of way, but none upon the right of way. T. J. Davis, a witness in behalf of himself and the other owners testified that the compensation and damages should be $4,300.00, that he based his judgment upon an estimate that he had made; and testified that the two wells producing gas brought in rentals of $600.00 per year, to which testimony of Mr. Davis, so far as it referred to the gas upon the land and the rentals accruing from the two producing wells, the counsel for the plaintiff objected, but the objection was overruled and plaintiff excepted. Here was proof of actual development of the gas, the wells

were bringing in certain definite rentals and it was certainly competent to show to what extent developments had been made, and what was actually being done with the land. It seems to be a rule well established that every element of value which would be taken into consideration between private parties in a sale of property should be considered in a proceeding of this character in arriving at a just compensation for the land taken, and it is proper to consider not only the use for which the land may be maintained at the time, but its adaptability to any and every useful purpose to which it might be put. In 15 Cyc. 724, "If a tract of which the whole or a part is taken for a public use, possesses a special value to the owner, which can be measured by money, he is entitled to have that value considered in the estimate of the compensation and damages. Compensation is not to be estimated simply with reference to the value of the land to the owner in the condition in which he has maintained it, but with reference to what its present value is in view of the uses to which it is reasonably capable of being put."—And cases there cited. In *Harrison* v. *Young*, 9 Ga. 359, it is held: "The value of land taken for public use is not restricted to its agricultural or productive qualities, but inquiry may be made as to all other legitimate purposes to which the property could be appropriated." In *Boom Co.* v. *Patterson*, 98 U. S. 403, it is held: "In determining the value of lands appropriated for public purposes, the same considerations are to be regarded as in a sale between private parties, the inquiry in such cases being, what, from their availability for valuable uses, are they worth in the market." And it is there further held: "As a general rule, compensation to the owner, is to be estimated by reference to the uses for which the appropriated lands are suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." In that case the court adopts the language of the supreme court of New York in the matter of "The Furman Street" (17 Wend. 669) where it is said the proper inquiry was, "What is the value of the property for the most advantageous uses to which it may be applied." In *Muller* v. *Railway Co.*, 23 Pacific 265 (Cal.) the court says: "In arriving at the value of the land, all its capabilities, all the uses to which it is adapted, should be

taken into consideration. These capabilities are estimated by a purchaser, and we cannot see why evidence in regard to them is not admissible. The same considerations are to be regarded as in a sale of land between private parties." *Boom Co.* v. *Patterson*, 98 U. S. 403. And in *Reed* v. *Railway Co.*, 17 N. E. 807 (Ill.) it is held: "The price to be paid by a railway company for land taken under eminent domain is its value for any purpose for which it is shown by the evidence it is available, and not simply its value as land as it is at the time." *Railway Co.* v. *Moore et al.*, 15 N. E. 764. A long line of decisions is cited to the same effect from the states of Illinois, Kentucky, Massachusetts, Mississippi, Missouri, New Hampshire, New York, Tennessee, Texas, Virginia, Washington, Wisconsin, and United States; 18 Cent. Dig. section 356. It is a fact that the property proposed to be taken in case at bar for the right of way is a developed gas property, two producing wells almost immediately on the line of the right of way. Could any one for a moment say that in negotiations between private parties for the sale and purchase of said property they would not take into consideration the fact of the existence of gas under the property as an element in ascertaining the value of the property? Gas is an article of commerce and the fact that it is now being piped to market from the premises is entirely proper to be taken into consideration as an element of value in fixing the amount of compensation, and it was proper to permit the witness to state what rental was being derived from the said gas wells, and it was competent evidence in estimating the value of the property. "The particular use to which the property is devoted and in consequence of which it has an intrinsic value to the owner is a fact which he has a right to have considered." 15 Cyc. 727, and cases there cited; see also 2 Lewis Em. Dom., Par. 479. The court did not err in admitting testimony in relation to the actual gas production, and the fact that the land to be taken was gas territory in view of the fact of its development as such. Said witness on cross-examination was asked, just how much he embraced for this five acres in his estimate of $4,300.00, and answered, "I told you that I regarded the coal under the right of way to be worth about $800.00. I put the land at $500.00." He then stated that he put the gas territory taken

at $3,000.00—making up his estimate of $4,300.00. Counsel for plaintiff moved the court to instruct the jury to disregard the witness' answer to the question propounded by counsel for defendants as to his estimate of damages of $4,300.00, which motion was overruled and plaintiff excepted, and counsel for plaintiff insist that the court erred therein to its prejudice in permitting speculative and fictitious estimates of values to go to the jury and not the market value of the property to be taken, which was not stated by the witness. *Dorlan* v. *Railroad Co.*, 46 Pa. St. 520, was an action for damages to a mill property by the construction of the road, where it was held that "The injury to the unused and surplus water power of the plaintiff is a legal ground of claim, and the measure of damages is its actual market value for any useful purpose, the mill property remaining as it was when the road was constructed; hence, evidence as to the power that could be gained by erecting a new dam further down the stream, making a shorter race and other alterations, was irrelevant and inadmissible." In *Canal Co.* v. *Archer,* 9 Gill & Johnson (Md.) 479, it is held, that in estimating the value of property condemned for public use the jury should give the owner what in their judgment it would actually, at the time, sell for, and not what it might bring, or perhaps ought to produce, at some future time; that possible or probable profits resulting from the enjoyment of the property, are not proper to be considered by the jury in making up their verdict; but they should limit themselves to the direct loss sustained by the owner. And in *Railroad Co.* v. *Hildebrand,* 136 Ill. 467, (27 N. E. 69), syl. point 2, it is held: "Error to instruct the jury that in estimating the compensations to be paid they should take into consideration all appreciable injuries and inconveniences caused by the taking, to the land not taken, 'although such injuries and inconveniences may be largely conjectural,' since the jury might infer that speculative damages were recoverable."—*Lamont* v. *Railway Co.*, 62 Iowa 193; *Railroad Co.* v. *McDermot*, 41 N. E. 648 (Neb.); *U. S.* v. *Taffe*, 86 Fed. Rep. 830. And in *Railway Co.* v. *Holmes,* 11 S. E. 658 (Ga.) it is held that, "Evidence of what plaintiff could have made by putting the land to other uses had defendant's tracks and buildings not been there, is inadmissible on the question of damages." "Where land is appropriated

for a public use a compensatory not a speculative remuneration is guaranteed by the law for lands taken and for the damages occasioned thereby to the remainder of the premises."—*Powers* v. *Railway Co.*, 33 O. St. 429.

The defendants, over the objections and exceptions of plaintiff in case at bar, had been permitted to prove by witness, H. M. Payne, a civil and consulting engineer and mining engineer, the probable number of tons of coal per acre underlying the land proposed to be taken and the value thereof per ton as measured by the usual price of royalty paid to land owners per ton for coal when the coal was leased and being produced, which doubtless formed the basis of the estimate of the witness, Davis, of the value of the coal under the land taken, when there was no evidence that coal was leased or mined or any royalties paid anywhere near the land taken, or that coal operations would affect that neighborhood or section in any reasonable time in the future; no works were opened near it, the land was not leased for operation, nor any near it as far as the evidence shows. There seemed to be no effort to prove the market value of the land to be taken. It was shown that there was some good coal under the land, but when it might be mined and removed does not appear. The coal is of no value while it must remain in the earth, it is the prospect of its production which gives it value. The early prospect of its development is what adds to its value; it is true it has a value now as an investment to be held for future development and, has, as such, a market value, and this market value is the true basis of compensation to be allowed. Coal lands are sold by the acre and have a market value by the acre, and the price is controlled by the various elements of value, the quality of the coal, the thickness of the seam, as well as conveniences and the facilities for conveying it to market. The estimate made by witness Davis was made upon a false basis, conjectural and speculative, and should have been excluded from the jury as well as all testimony fixing the basis of value upon the price per ton paid as royalty in coal fields being operated; the value must be arrived at by ascertaining the true market value of the land proposed to be taken, taking into consideration all the elements of value as would be done in negotiations for the sale and purchase thereof between private parties. This principle is

well settled in *Bodkin* v. *Arnold*, 48 W. Va. 108, where it is held in syl. point 6: "The true measure of damages is compensation for the actual loss sustained by the plaintiff in being deprived of the use of his property, and speculative profits, founded on an exaggerated notion of the real value of the property, are not recoverable. Evidence tending to establish such speculative profits is inadmissible, as it may mislead the jury in arriving at the fair rental value of the property."

It is assigned as error that the court permitted to be propounded by counsel for defendants to witness W. H. Hovey, the question, "Tell the jury what your experience is and from the experience you have had as to the probability of oil in that neigborhood," and the same to be answered over the objection of plaintiff's counsel. Mr. Hovey was placed upon the witness stand as an expert oil man. His testimony would scarcely raise a suspicion in the mind of any one that there was oil in the tract of land from which the right of way is sought to be taken. If the land contained oil the defendants had a right to show it by any evidence they could adduce that was practical, and not merely conjectural and speculative. Nothing was shown as to the presence of oil further than the fact of the development of gas, which is at least to some extent, an indication of the presence of oil, and this fact was already and properly before the jury without the testimony of Hovey. In the absence of all development of oil or the presence of oil, all testimony relative thereto was mere guess work and liable to confuse or mislead the jury, and the question being purely speculative and any answer thereto necessarily so, the same should not have been permitted to be answered.

. The first error assigned is in refusing to set aside the verdict of the jury and grant a new trial, "Because the amount of compensation found by the verdict is so high that it must be attributed to prejudice, partiality, passion, or mistake of law or judgment."—Citing in support of this assignment, *Railway Co.* v. *Nighbert*, 46 W. Va. 202, where it is held: "A verdict finding an amount of compensation in a proceeding by a railroad company to condemn land, that is so high it must be attributed to prejudice, passion, bias, partiality or mistake of law or judgment, will be set aside." It is true

the verdict is very high compensation for the property pro-
posed to be taken, and damages to the residue of the tract,
when we consider the character, nature and quality of the
land taken as well as the residue of the tract. How far the
verdict of the jury was influenced by the speculative evidence
permitted to go to the jury cannot be known, and as the case
must again be tried before another jury it is not deemed
proper to discuss the evidence.

It is claimed by defendants that the jury having viewed
the premises in the course of the trial, that such view is a
part of the evidence in the case; that what they see relevant
to the issue to be decided by them is alway evidence in a
primary sense, and what is detailed to them concerning the
same subject matter by witnesses is evidence merely in a
secondary sense; and that the view of the premises was con-
clusive, and that the verdict should not be disturbed, citing
several authorities.

The purpose of a personal inspection by the jury is to
enable them to view the whole situation and see for them-
selves the property to be taken, its character and quality,
and its relation to the residue of the tract from which the
right of way is taken, and thereby obtain a more intelligent
grasp of the evidence adduced before them, which, taken in
connection with their view they are better enabled to arrive
at a just and proper conclusion as to the amount to be paid.
In *Washburn* v. *Railroad Co.*, 59 Wis. 364, it is held: "In
assessing the compensation to be made to the owner of land
taken by a railroad company the jury may resort to their
own knowledge of the premises, obtained from a *view* there-
of, and to their general knowledge of the elements which
effect the assessment, in order to determine the relative
weight of conflicting testimony as to value and damages, but
their assessment must be supported by the testimony or it
cannot stand. Instructions from which the jury might rea-
sonably have understood that they were to assess the com-
pensation according to their own knowledge, judgment, and
good sense, aided by their view of the premises, and that
they might do so without regard to the testimony or in oppo-
sition thereto, are *held* erroneous." In the absence of inad-
missible testimony, or erroneous instructions, a verdict ren-
dered by a jury should not be disturbed unless it was so

high, or so low, that it must be attributed to prejudice, partiality, passion or mistake.   When a false and illegal basis of values has been permitted to be placed before the jury over the objections of a party, it will be presumed that the objecting party was prejudiced thereby.

For the reasons herein stated, the judgment is reversed, the verdict of the jury set aside and the case remanded to the circuit court of Mingo county there for a new trial to be had therein.

*Reversed.*