STROUDS CREEK AND MUDDLETY RAILROAD COMPANY

*v.*

H. LEE HEROLD, *et al.*

(No. 9929)

Submitted September 23, 1947. Decided December 2, 1947.

*A. N. Breckinridge* and *Ben P. Brown,* and *Hoffheimer, Stotler & Louchery,* for plaintiff in error.

*G. D. Herold* and *Chas. E. Mahan,* for defendants in error.

HAYMOND, JUDGE:

The applicant, Strouds Creek and Muddlety Railroad Company, on this writ of error, seeks reversal of a judgment of $8,000.00 in favor of the landowners, the defendants H. Lee Herold and Ona Herold, as compensation

for a parcel of land of 11.7 acres and damage to the residue of a larger tract of which it is a part entered by the Circuit Court of Nicholas County upon the verdict of a jury for that amount on September 9, 1946, in a condemnation proceeding instituted by the applicant in that court.

The land taken in fee for use by the applicant in the construction, operation and maintenance of its line of railway in Nicholas County consists of a strip 3,972 feet in length which extends through and divides about 100 acres of bottom land of a 343 acre farm owned by the defendant, H. Lee Herold, subject to the contingent right of dower of his wife, the defendant Ona Herold. This land, which the strip taken by the applicant cuts into two pieces, lies on both sides of Muddlety Creek, a stream which flows through it, and constitutes the most valuable portion of the entire farm. The width of the strip of land taken is fifty feet on each side of the center line of the railroad for a distance of 2,855 feet and fifty feet west and one hundred and fifty feet east of the center line for the remaining distance of 1,117 feet. The railroad, which extends through the entire section of bottom land in a north and south direction, was practically completed at the time of the trial. Six drains or culverts, which the landowners contend are insufficient to carry the water which accumulates on the bottom land from heavy rainfall and overflows of the stream in rainy weather, are located across the strip beneath the bed of the railroad. Two of them are thirty six inches each in diameter and the remaining four are twenty four inches each in diameter.

At the upper or northern end of the bottom land the railroad is constructed on a fill which is about seven feet in height at that location. As the fill extends south from its beginning point its height diminishes. As the railroad approaches the southern boundary of the land it passes through a cut which is a few hundred feet in length and seventy five feet in height at the highest point. At the time of the trial only one farm crossing had been pro-

vided by the applicant at a location selected by the defendant, H. Lee Herold, approximately fifty feet distant from the farm crossing formerly used by him, and the strip taken destroyed an old road on the farm which had been used for travel and haulage at the southern end of the farm. The railroad, as located, cuts off or isolates a small, triangular portion of the farm, between the railroad and the creek, containing about three fourths of an acre, at the lower or southern end.

A vein of coal, known as the Peerless seam, is located beneath the surface of the land. A core drill test made on the farm, and other similar tests on neighboring lands prior to the institution of this proceeding, indicate that the thickness of this coal seam, which is the principal and presently workable vein of coal under the land of the defendants, is approximately forty one inches and contains a two inch fault or "parting". No oil or gas has been drilled for or discovered on the land.

The defendants lived on the farm until the year 1921, when they moved from it. They have not since lived there or farmed the tract. Three fourths of the land has never been plowed or used to raise any crop. The bottom land is not available for buildings because of the overflow of water from the creek and heavy rains during some seasons of the year. The farm house and the other buildings on the farm are located on land above the level of the bottom. The defendant, H. Lee Herold, who lives in Summersville, is a merchant and, since he moved from the farm in 1921, about twenty five years before the date of the trial, the only use that he or any other person has made of the farm has been for pasture for a few of his cattle and sheep from time to time, and for raising a few stacks of hay at different times.

Within the past few years, and since it became generally known that the railroad would enter that territory, the vein of coal known as the Peerless seam, beneath the surface of the farm, has become valuable commercially. A number of leases of coal for mining pur-

poses have been made and several coal mines have been opened and are now in operation on other lands in that neighborhood. Though the defendant, H. Lee Herold, has received an offer to lease the coal under the farm, he has not done so and, at the time of the trial, no lease had been made and no mining of the coal had occurred.

An award of compensation in the amount of $6,800.00 was made and reported by commissioners appointed by the court. The applicant filed exceptions to the report. The exceptions were overruled and the question of compensation was submitted to a jury of freeholders. Upon the trial the defendants, over objection and exception by the applicant, were permitted, by cross examination of witnesses for the applicant and by testimony of witnesses produced in their behalf, to introduce evidence of the value of the land apart from the coal, and of the value of the coal upon a leased or operated basis of the estimated amount of recoverable coal from the forty one inch vein at the rates per ton provided by mining leases for the coal under other surface lands in the neighborhood of the farm of the defendants. The defendants were also allowed to show, over like objection and exception, that the drains are inadequate to dispose of the water which accumulates on the untaken land of the defendants, that one farm crossing had been provided by the applicant, and that the location of the railroad cut off the access to Muddlety Creek for cattle of the defendants by closing and rendering useless the farm crossing formerly used for that purpose.

The trial court refused an instruction offered by the applicant relating to the basis of compensation for the land taken, and gave an instruction offered by the defendants with respect to benefits which may have accrued to their land and all other land in the community from the construction of the railroad. The instruction which the court refused to give would have told the jury to base the compensation for the land taken upon its then fair market value for any immediate use to which it might be devoted and would have excluded consideration of

any value derived from any future lease of the land for the purpose of mining the recoverable coal on a royalty basis for such tonnage as may be mined. The instruction given by the court directed. the jury, in ascertaining compensation for the land taken by the applicant and damage to the residue of the land of the defendants, not to allow any benefits that may have accrued to it in common with all other land in the same community by reason of the building of the railroad.

After overruling the motion of the applicant to set aside the verdict and grant it a new trial, the trial court confirmed the verdict and entered the judgment of which the applicant complains.

To reverse the judgment the applicant presents and relies upon these principal assignments of error: (1) Admission of evidence of separate values of the land and the coal; (2) admission of evidence of the value of the unleased and unopened coal on the basis of a future lease which should provide for the payment of royalty on the estimated tonnage of recoverable coal; (3) admission of evidence that the construction of the railroad upon the land taken cut off access to Muddlety Creek for the live-stock of the defendants by closing the farm crossing formerly used by them for that purpose, and that the applicant had constructed one farm crossing on the land; (4) admission of evidence of the inadequacy of the drains provided by the applicant to dispose of the water caused to accumulate on the untaken land of the defendants by the construction of the railroad; (5) the refusal of the trial court to give an instruction offered by the applicant which would have directed the jury to ascertain the value of the land taken from evidence of its then fair market value for any use to which it might be devoted in the immediate future but which would have excluded from consideration any value of the land resulting from a future lease providing for the production of the coal by later mining operations and the payment of royalty upon the estimated mineable tonnage; (6) the giving of an instruction offered by the defendants which directed the

jury, in ascertaining just compensation for the land taken and damage to the residue, not to allow any benefits as may have accrued to it in common with other land in the same community by reason of the building of the railroad; and (7) excessiveness of the amount of the verdict.

All the assignments which deal with the admission of evidence of the value of the land and the giving and the refusal of instructions involve the method of ascertaining just compensation for land taken and damage to the residue in a proceeding to take a part of the land of its owner. They will be considered and resolved together as they present closely related questions.

The well established and universally recognized rule is that the amount of compensation for land actually taken by the condemnor in a proceeding instituted for that purpose is determined by the market value of the land at the time it is taken. *Guyandot Valley Railway Co. v. Buskirk,* 57 W. Va. 417, 50 S. E. 521, 110 Am. St. Rep. 785. The measure of damages to land, when no part of it is taken in connection with the construction of a railroad or other improvement adjacent to it, is the difference in its market value immediately before and immediately after the construction of the railroad or the improvement beyond all benefits to the property arising from such construction. When a portion of a tract of land is taken and damage occurs to the residue the owner is entitled to compensation for the land taken and for damage to the residue beyond the benefits mentioned in the statute Section 9, Article 2, Chapter 28, Acts of the Legislature, 1933, Regular Session. In such instance, the true measure of compensation is the market value of the land taken and the difference between the market value of the residue immediately before and immediately after the taking beyond the benefits which accrue to the residue by reason of the improvement, as provided by the statute, Section 9, Article 2, Chapter 28, Acts of the Legislature, 1933, Regular Session. *State v. Sanders,* 128 W. Va. 321, 36 S. E. 2d 397; *State v. Boyd,* 129 W. Va. 715, 41 S. E. 2d 665.

As to the character of the benefits to be taken into consideration in determining the market value of the residue immediately after the taking of the land appropriated, the decisions of this Court giving effect to the provisions of the statute as it existed prior to the enactment of Section 9, Article 2, Chapter 28, Acts of the Legislature, 1933, Regular Session, permitted only peculiar or special benefits to be deducted from the damage to the residue immediately after the taking of the portion of the land condemned or the making of the improvement when no land was taken. *Guyandot Valley Railway Co.* v. *Buskirk,* 57 W. Va. 417, 50 S. E. 521, 110 Am. St. Rep. 785; *Buckhannon and Northern Railroad Co.* v. *Great Scott Coal and Coke Co.,* 75 W. Va. 423, 83 S. E. 1031; *Baltimore and Ohio Railroad Co.* v. *Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868; *Jones* v. *City of Clarksburg,* 84 W. Va. 257, 99 S. E. 484; *McGibson* v. *County Court of Roane County,* 95 W. Va. 338, 121 S. E. 99; *Harvey* v. *City of Huntington,* 103 W. Va. 186, 136 S. E. 840; *County Court of Calhoun County* v. *Force,* 106 W. Va. 581, 146 S. E. 530; *County Court of Clay County* v. *Adams,* 109 W. Va. 421, 155 S. E. 174. Even after the enactment of the statute in 1933, three decisions of this Court in which that statute was overlooked gave effect to the provisions of the former statute. *Hardy* v. *Simpson,* 118 W. Va. 440, 190 S. E. 680, 191 S. E. 47; *Peddicord* v. *County Court,* 121 W. Va. 270, 3 S. E. 2d 333, and *State* v. *Jacobs,* 121 W. Va. 592, 5 S. E. 2d 617. Those cases, however, in so far as they adhere to the earlier rule, which permitted only peculiar or special benefits to be included in the value of the land not taken after completion of the improvement, were disapproved in the later case of *State* v. *Sanders,* 128 W. Va. 321, 36 S. E. 2d 397; and the rule applied in the prior decisions cited, limiting the benefits to peculiar or special benefits, has been abrogated by the statute enacted in 1933.

The present statute, Section 9, Article 2, Chapter 28, Acts of the Legislature, 1933, Regular Session, requires commissioners appointed in a condemnation proceeding to ascertain just compensation for the person entitled to

it for so much of his land as is taken and for damage to the residue not taken beyond all benefits to be derived, in respect to such residue, from the work to be constructed or the purpose to which the land taken is to be appropriated. This statute applies to and governs the action of a jury when the question of just compensation is determined by it. 54-2-10, Code, 1931. Under the statute and the applicable principles enunciated in the *Buskirk* case, as to compensation for the land taken, and in the *Sanders* case, as to compensation for damage to the residue of the land not taken, the true measure of compensation in this proceeding is the market value of the land taken, at the time of the taking, and the difference between the market value of the residue not taken immediately before and immediately after the taking of the land condemned, beyond all benefits to be derived, with respect to the residue, from the construction of the railroad, all such benefits to be considered and included in the latter value.

It is insisted by the defendants that construction and application of the statute to require all benefits, whether general or special, to be deducted from the damage to the residue of the land not taken or, as otherwise stated, to include such benefits in the market value of the residue immediately after the taking of the land appropriated by the condemnor, render the statute unconstitutional. There is no merit in this contention. In guaranteeing just compensation to the landowner, the Constitution of this State, in Section 9 of Article III, provides that when private property is taken or damaged for public use, or for the use of a company incorporated for the purpose of internal improvement, compensation shall be ascertained in such manner as may be prescribed by general law, and that, when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders. The Constitution does not define just compensation. Though it guarantees payment of just compensation to the owner for his property taken or damaged, it does not require that he shall receive equal benefits, or any benefits, which result to his land from a

public improvement. The constitutional guarantee extends to the loss and the damage suffered by the owner of land, but not to the benefits which accrue to his land.

In requiring all benefits to be charged against the damage to the residue of the land not taken the statute does not deprive the landowner of any interest or right in the land to which he was entitled before the damage to it was inflicted. The benefits for which the statute charges him are derived and accrue from the construction of the work or the use to which the land taken is to be appropriated. This work or this use produces the damage to the untaken residue of his land. That which causes the damage also creates the benefits. For this damage he must be compensated in the manner provided by law. The benefits which accrue to his land are a mere fortuity. They result from no effort or activity on his part, but from sources entirely beyond his control and which operate, without regard to his wishes, to deprive him of that which he owns and as to which no benefits had previously accrued. He was not entitled to them and they did not exist before the construction of the improvement brought them to his land. Without the improvement which produced the damage the benefits would not exist. The market value of his land, that taken and the residue as well, as it was immediately before the taking, is increased by the amount of the general benefits which accrue to it and he receives the increase as an element of its market value which, for the land taken, he must be paid without any deduction for benefits. See *Buckhannon and Northern Railroad Co.* v. *Great Scott Coal and Coke Co.*, 75 W. Va. 423, 83 S. E. 1031; *Guyandot Valley Railway Co.* v. *Buskirk,* 57 W. Va. 417, 50 S. E. 521, 110 Am. St. Rep. 785. In this way, and to that extent, the deduction required by the statute of the benefits from the damage to the residue, is minimized or absorbed. When the damage is ascertained and paid the landowner is compensated for his loss, so far as it attaches to the residue of his land, and in denying him the value of the benefits in the ascertainment of the damage the statute does not take from him,

or deprive him of, any property right or interest owned by him or for which he is entitled to receive compensation. In *Miller* v. *City of Asheville,* 112 N. C. 759, 16 S. E. 762, the Supreme Court of North Carolina says:

> "* * * the present act, which extends the assessment of benefits to all received by the landowner, instead of a restriction to the special benefits, is valid. All the landowner can claim is that his property shall not be taken for public use without compensation. Compensation is had when the balance is struck between the damages and benefits conferred on him by the act complained of. To that, and that alone, he has a constitutional and vested right. The legislature, in conferring upon the corporation the exercise of the right of eminent domain, can, in its discretion, require all the benefits, or a specified part of them, or forbid any of them to be assessed as offsets against the damages. This is a matter which rests in its grace, in which neither party has a vested right, and as to which the legislature can change its mind always before rights are settled and vested by a verdict and judgment."

*Stamey* v. *Town of Burnsville,* 169 N. C. 39, 136 S. E. 103; *Ayden* v. *Lancaster,* 197 N. C. 556, 150 S. E. 40. See also the recent case of *Long* v. *Shirley,* 177 Va. 401, 14 S. E. 2d 375, and the cases cited in the opinion which bear upon the constitutional question involved. In that case the Supreme Court of Appeals of Virginia upheld the constitutionality of a statute which required the enhancement in value to the remaining land of the owner, occurring from an improvement contemplated or made, to be offset against the damage resulting to the residue of his land from the improvement. The Court held that the statute did not violate the Constitution of the United States or the Constitution of Virginia. The Constitution of Virginia, Section 58, provides that the General Assembly shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation.

There is no force in the argument that the owners of other lands in the territory benefited by the construction of the railroad obtain without cost the general benefits which accrue to their lands and for which the owner whose land is damaged is charged by deducting their value from the amount of his damage. One answer to that argument is, as just indicated, that the landowner has no constitutional right to equal benefits, or to any benefits, which result from the improvement. Another answer is that the statute applies equally to all landowners who are affected by its provisions. If and when their lands are damaged it applies to them with equal force and effect. That their lands have not been or will not be damaged can not operate to affect or impair the validity of the statute in its application to those who come within its scope.

Though the constitutionality of the statute was not challenged and that question was not expressly raised or determined in the *Sanders* case, the validity of the statute with respect to benefits was at least tacitly recognized and by implication upheld. The construction given to, and the application made of, the statute and the conclusion reached necessarily so indicate. In considering the constitutionality of the statute it should be remembered that the test of legislative power in this State is constitutional restriction. That which the Constitution of this State does not forbid the Legislature to do, and which does not violate any provision of the Constitution of the United States, the Legislature may do. *State v. Harrison,* 130 W. Va. 246, 43 S. E. 2d 214; *Harbert v. Harrison County Court,* 129 W. Va. 54, 39 S. E. 2d 177; *State Road Commission v. County Court of Kanawha County,* 112 W. Va. 98, 163 S. E. 815. The statute is not violative of any provision of the Constitution of this State or of the Constitution of the United States and its validity is recognized and sustained.

In *Buckhannon and Northern Railroad Co. v. Great Scott Coal and Coke Co.,* 75 W. Va. 423, 83 S. E. 1031, it is said that increased value from an additional way and

from additional facilities furnished for transportation, by the building of a railroad, is a general and not a special benefit. Generally it may be said that advantages of a general character which accrue to the landowner in common with other landowners in the same community from the improvement are general benefits. Improvement of a road or a street, improved facilities for travel or transportation of the public, accessibility of telephone line, and availability of water for irrigation purposes are mentioned as examples of general benefits.

By modifying the former statute in omitting the words "the peculiar", which it contained, from the present statute, and by inserting in their place the word "all", it is manifest that the Legislature intended to require the deduction of all benefits, general as well as peculiar or special, in the ascertainment of damage to the residue of the land not taken. This requirement, under the Constitution of this State, Section 9, Article III, the Legislature has the power to impose. In *Stamey* v. *Town of Burnsville,* 189 N. C. 39, 126 S. E. 103, the Supreme Court of North Carolina says: "The Legislature has the power to allow municipal corporations to have the general benefits assessed as offsets against damages in an action to acquire land for a public purpose." In the later case of *Town of Ayden* v. *Lancaster,* 197 N. C. 556, 150 S. E. 40, the same Court uses this language: "The Legislature has power to provide by statute that the damages accruing to the landowner can be reduced not only by special benefits received by the landowner, but by all benefits accruing to him 'either special or in common with others'." All benefits which, in a condemnation proceeding, are to be deducted from the damage to the residue of the land not taken, however, must result from the construction of the improvement. They must have accrued or be actually or potentially available, permanent, definite, and capable of ascertainment, at the time the land appropriated is taken, or such as at that time may be reasonably expected immediately to accrue. Benefits which may originate in the future or which are based on speculation or conjec-

ture can not be allowed. See 29 C. J. S., Eminent Domain, Section 183a. In a condemnation proceeding the date of the taking of the land is the time to which reference should be made by the commissioners or the jury in assessing damages, *Buckhannon and Northern Railroad Co. v. Great Scott Coal and Coke Co.,* 75 W. Va. 423, 83 S. E. 1031; and it is as of that date that the determination and the deduction of benefits from the damage to the residue should be made. See 29 C. J. S., Eminent Domain, Section 183c.

In ascertaining, in a condemnation proceeding, the market value of land in fee taken in whole or in part, consideration should be given to every element of value which ordinarily arises in negotiations between private persons with respect to the voluntary sale and purchase of property. For that purpose it is proper to consider the use then being made of the land, its suitability for other uses, its adaptability for every useful purpose to which it may be reasonably expected to be immediately devoted, and the most advantageous uses to which it may be so applied. *Railway Co. v. Davis,* 58 W. Va. 620, 52 S. E. 724; *Baltimore and Ohio Railroad Company v. Bonafield's Heirs,* 79 W. Va. 287, 90 S. E. 868; *Wood v. County Court of Wyoming County,* 100 W. Va. 29, 129 S. E. 747. To establish the value of the land, the presence of crops, trees, shrubs and timber upon it and of coal, oil, gas, stone and other minerals and valuable deposits upon or under the surface may be shown. The presence, the nature, and the state of development of all these components, contents or elements, whatever they may appropriately be called, are pertinent as bearing upon and tending to establish the market value of the land. Consideration, however, should be confined to the land and its contents and elements together and as an entirety when there is no separate ownership with respect to any of them. The various components, contents and elements are part of and, together with the surface, constitute the land in its entirety as a complete and composite unit. Generally land of the character of that owned by the defendants

is sold and has a market value by the acre and the price is affected by the various elements which give it value. The landowner is entitled to consideration of all the advantages which the land possesses, but the only proper inquiry is that which concerns the value of the land as land at the time of the taking. He may not realize on possibilities of increased value of the land except to the extent that they affect its then existing value. *Chesapeake and Ohio Railway Co. v. Allen,* 111 W. Va. 481, 163 S. E. 22.

Compensation for land should be ascertained and determined on the basis of its value at the time it is taken or damaged. All of its components may be considered in arriving at the value of the unit, the land itself, but none of them, when not separately owned, may be given an independent value apart from the land as land. With respect to land which contains coal, oil, gas and other minerals, in place and as to which there has been no severance of title, the present existence, character and state of development of these components may be established, but they may not be valued separately from the land of which they are a part. 1 Nichols, Eminent Domain, 2d Edition, Section 226; 29 C. J. S., Eminent Domain, Section 174; *Forest Preserve Dist. v. Caraher,* 299 Ill. 11, 132 N. E. 211; *Ringwood v. North Jersey Dist. Water Supply Comm.,* 105 N. J. Law 165, 143 A. 369; *Seale v. Lackawanna and Bloomsburg Railroad Co.,* 33 Pa. St. 57; *Reading & P. R. Co. v. Balthaser,* 119 Pa. St. 472, 13 A. 294. The inquiry as to value should be limited to the land as it exists at the time of the taking with due regard to the uses to which it is then applied or for which it may be suitable for any useful purposes reasonably to be expected immediately to occur. Values based on future or prospective uses to which the land may be applied and which are expected to bring or to produce estimated compensation or income, which are predicated on speculation or conjecture, are not to be considered. *Railway Co. v. Davis,* 58 W. Va. 620, 52 S. E. 724.

Evidence introduced in behalf of the defendants dealt with separate values for the land and the coal. Over

objection and exception of the applicant, the defendant, H. Lee Herold, testified that the value of the surface of the land taken, exclusive of the coal beneath it, including damages to the residue, was at the rate of $400.00 per acre and that the value of the coal was from $500.00 to $600.00 an acre. This evidence was inadmissible and its introduction should not have been permitted.

The testimony elicited by the defendants upon cross-examination of witnesses produced by the applicant with respect to the estimated recoverable percentage of the coal beneath the surface of the land of the defendants, at various existing rates of royalty for each ton of coal mined as provided in mining leases upon the same vein of coal in and under adjoining land and other lands in the general neighborhood of the farm of the defendants and the number of tons of coal per acre obtainable by proper mining methods from their land, was offered for the purpose of establishing the value of the land taken and of the untaken residue. Testimony of witnesses produced in behalf of the defendants and of the defendant, H. Lee Herold, to the same effect and for the same purpose, was also introduced over objection and exception of the applicant. All this evidence was improper and its introduction should not have been permitted. There has been no lease for coal mining purposes or no mining operation on the farm of the defendants. This evidence related to conditions which did not, in fact, exist on the land of the defendants and dealt with future conditions which might or might not occur, and which were based on speculation and conjecture. See Annotation 156 A. L. R. 1423, 1424. It was similar in substance and effect to evidence condemned by this Court in the case of *Railway Company* v. *Davis,* 58 W. Va. 620, 52 S. E. 724. The admission of evidence of that type was there held to be prejudicial to the party who objected to its introduction.

From the foregoing discussion of the questions involved with respect to the instructions given and refused and the evidence of value introduced by the defendants, and in view of the applicable principles heretofore stated,

it is evident that the trial court erred in refusing to give the instruction offered by the applicant and in giving the instruction relating to benefits offered by the defendants. It was also error to permit the introduction of evidence of the separate values of the land and the coal and of the value of the coal under hoped for future conditions based on speculation and conjecture.

The defendants insist that the action of the trial court in giving the instruction relating to benefits, offered by them, was justified because the applicant failed to carry the burden of proving that benefits accrued to the land of the defendants by reason of the construction of the railroad. Benefits, whether general or special, can only be set off against or deducted from compensation for damage to the residue of the land not taken. They can not be set off against or deducted from the compensation to be paid for the land taken by the condemnor. *Guyandot Valley Railway Co. v. Buskirk*, 57 W. Va. 417, 60 W. Va. 521, 110 Am. St. Rep. 785; *Morrison v. Fairmont and Clarksburg Traction Co.*, 60 W. Va. 441, 55 S. E. 669.

It is true that the burden of proving peculiar or special benefits rests upon the applicant. *Buckhannon and Northern Railroad Co. v. Great Scott Coal and Coke Co.*, 75 W. Va. 423, 83 S. E. 1031. In principle, the same requirement as to general benefits should be satisfied by the applicant in a condemnation proceeding. Whether the applicant carries that burden concerns the weight of the evidence as to that issue. Even if the applicant may not successfully discharge that requirement of evidence relating to general benefits, an instruction given with respect to such benefits must correctly state the law which governs them, and there must be sufficient evidence on which to base the instruction. In this proceeding the evidence of the location and the construction of the railroad, which had been practically completed at the time of the trial, was sufficient to establish the basis for a proper instruction with respect to general benefits. Under the evidence introduced on that issue the trial court was not justified in directing the jury, as a matter of law,

which the instruction in the form given did, that no such benefits had accrued to the residue of the land of the defendants. That question was for the jury under proper instructions. The instruction was misleading and, for that reason, it should have been refused. From its language it is not clear whether the instruction was intended to apply to benefits to the land taken or to benefits to the residue. In giving it the judge of the trial court appeared to entertain the opinion that it referred to and directed the jury not to allow benefits to be deducted from the compensation to be ascertained for the land taken. The wording of the entire instruction, however, indicates that it was intended to deal with and prohibit the deduction of benefits from the damage to the residue. This ambiguity in the instruction necessarily tended to confuse the jury.

It was also error for the trial court to admit evidence of the inadequacy of the drains or culverts installed by the applicant. Such evidence bears upon the question of the value of the land as it existed immediately after the taking of the land appropriated as the basis for determining the amount of the damage to the residue. The evidence tends to show that the location and the construction of the drains were the result of negligent or unskillful conduct of the applicant. Damages to the residue of land not taken which result from the negligent or unskillful conduct of the condemnor in the construction of a railroad or other public improvement upon the land taken may not be recovered in a condemnation proceeding. Damages so inflicted constitute the basis for a separate and independent action. *Buckhannon and Northern Railroad Co.* v. *Great Scott Coal and Coke Co.*, 75 W. Va. 439, 83 S. E. 1031; *Watts* v. *Norfolk and Western Railway Co.*, 39 W. Va. 196, 19 S. E. 521, 23 L. R. A. 674, 45 Am. St. Rep. 894.

The applicant complains of evidence, introduced by the defendants over objection and exception, of the destruction of the farm crossing which formerly existed on their land to afford access to the water of Muddlety

Creek for livestock, and of the location of the single farm crossing constructed by the applicant. The contention of the applicant is that this evidence tends to establish damages for the construction of a farm crossing and that its introduction should not have been permitted because damages of that character may not be ascertained in this proceeding by virtue of the statute, Section 9, Article 2, Chapter 28, Acts of the Legislature, 1933, Regular Session, which provides that if property is proposed to be taken by a company incorporated for construction of a railroad, no damages shall be ascertained for the construction of any farm crossings, fences or cattle guards, or for keeping them in repair. This contention must be rejected. The only effect of the evidence was to show the condition of the residue of the land as it existed immediately after the taking of the land appropriated as compared to its immediately prior condition. The evidence does not indicate any item of damage for the construction by the applicant of the farm crossing which it has placed on the residue of the land of the defendants. The evidence was unobjectionable and its admission was proper.

The applicant assails the verdict as excessive. As the judgment must be reversed, the verdict set aside, and this proceeding remanded for a new trial, it is inadvisable to discuss and unnecessary to resolve that question upon this writ of error.

For reasons stated, and because of errors mentioned and discussed, the judgment of the Circuit Court of Nicholas County is reversed, the verdict of the jury is set aside, and this proceeding is remanded to that court for a new trial which is hereby awarded the applicant.

*Judgment reversed; verdict set aside; new trial awarded.*